667 A.2d 1166

**COMMONWEALTH of Pennsylvania**

v.

**Vincent FANASE, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Vincent FANASE.**

Superior Court of Pennsylvania.

Argued & Submitted Oct. 10, 1995.

Filed Nov. 30, 1995.

---

656

Lester Crawford, Bethel Park, for Vincent Fanase.

Russell Broman, Assistant District Attorney, Pittsburgh, for Commonwealth.

Before ROWLEY, President Judge, and TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This case presents cross-appeals from the February 26, 1992 judgment of sentence imposing upon Vincent Fanase a term of imprisonment of three (3) to seven (7) years. Following a jury trial, Fanase was convicted of burglary,[1] receiving stolen property[2] and criminal conspiracy.[3] Also, at sentencing, Fanase pled guilty to two separate offenses and received an additional two (2) to four (4) year concurrent sentence. The Commonwealth appeals from the reinstatement of Fanase's appellate rights and Fanase appeals from the denial of his claims under the Post Conviction Relief Act. The facts and procedural history of this case are as follows.

On July 2, 1990 at approximately 10:15 p.m., a home at 601 Berkshire Avenue in Brookline was burglarized. During the burglary, a neighbor, Francis Monaghan, noticed a blue Chevy Celebrity station wagon parked in an alley behind the residence with an individual in the driver's seat. After watching the car for 45 minutes, Mr. Monaghan became suspicious and approached the car. Mr. Monaghan then walked past the car at a distance of approximately twelve feet, with the sole purpose to observe the driver, and "looked right at his face." (N.T., 12/10/91, p. 86.) At trial, Mr. Monaghan identified Fanase as the car's driver. Following the walk-by, Mr. Monaghan returned to his porch, approximately 50 feet from the car, and continued to watch Fanase. Fanase then moved his car to the rear of 601 Berkshire Avenue whereupon Mr. Monaghan observed a white male open the tailgate and a

1. 18 Pa.C.S. § 3502.

2. *Id.,* § 3925.

3. *Id.,* § 903(a)(1).

black male carry items from the residence and place them in Fanase's car.

Mr. Monaghan called 911 and reported the license number of Fanase's car. He then proceeded to follow Fanase and his accomplice, in his own vehicle, until he lost the car in Dormont. Based on the license number provided by Monaghan, Pittsburgh Police proceeded to Fanase's residence, where they found the blue Celebrity matching the description and license number parked in the driveway. Officers also noticed, at 11:30 p.m., that the hood of the car was hot, indicating that it had been driven recently. Subsequently, Mr. Monaghan identified Fanase from a police photo array immediately and without hesitation. A warrant was thereafter issued and, on July 13, 1990, Fanase was arrested and charged with the aforementioned offenses. Also, on April 30 and August 22, 1991, respectively, Fanase was charged with two separate counts of receiving stolen property.

Trial on the charges of July 13th was held between December 9 and 11, 1991, and Fanase's wife, Yvonne, testified on direct examination that on July 2nd, the night of the burglary, Fanase came home from work, removed his artificial leg, ate dinner and "fell asleep on the couch and he was on the sofa all the time." (N.T. at 199.) She also testified that her stepson borrowed the car on the night of July 2nd. On cross-examination, however, Mrs. Fanase testified as follows:

Q And you said that [the stepson] brought the car back at 11:15, 11:30?

A Approximately.

Q What day was this?

A To the best of my recollection he borrowed the wagon on Monday and he brought it back on Monday evening.

Q But you don't remember that for a fact?

A No.

Q Could have been some other night?

A Could have been.

Q In fact, could not have happened at all; correct?

A (Shrugged shoulders.)

(N.T. at 224.)

On December 11, 1991, the jury returned a verdict of guilty on all counts. On February 26, 1992, appellant was sentenced on the charges of July 13, 1990. At the same time, Fanase pled guilty to the charges of April 30 and August 22, 1991. Judgment of sentence was entered and, thereafter, Fanase neither sought to have his sentence reconsidered nor appealed.

On January 26, 1993, nearly one year after the judgment of sentence, Fanase filed a pro se motion for post-conviction relief as to all of the charges for which appellant was sentenced on February 26, 1992. The claims asserted by Fanase's motion were: (1) trial counsel was ineffective for failing to request an alibi instruction; (2) trial counsel was ineffective for failing to request a no-adverse-inference charge; and (3) a police officer's reference, on direct examination, to photos of Fanase in police records prejudiced his constitutional right to a fair trial. PCRA counsel was then appointed.

On November 10, 1994, the PCRA court, per the Honorable Cheryl Allen Craig, reinstated Fanase's appellate rights and denied all other claims raised in the PCRA petition. On December 7, 1994, Fanase appealed the denial of his PCRA claims and on December 16, 1994, the Commonwealth filed a cross-appeal challenging the reinstatement of Fanase's appellate rights.

We first address the Commonwealth's claim that the PCRA court erred in reinstating Fanase's appellate rights. In addressing this argument we revisit a portion of the procedural history of this litigation. In his petition for PCRA relief, filed January 26, 1993, Fanase presented no less than 14 allegations of trial counsel ineffectiveness. The final allegation is "trial Counsel was further ineffective for failing to ... file a direct appeal on defendant's behalf as requested by defendant." (PCRA Petition at 10.) At the PCRA hearing held on November 2, 1994, the sole testimony presented was that of Fanase's trial counsel, who testified at length concerning several of the

ineffectiveness allegations. However, our review of the 30–page hearing transcript reveals not a single question or answer, either on direct or cross-examination, concerning the failure to appeal Fanase's conviction. As noted, following the hearing, the PCRA court reinstated Fanase's appellate rights before turning to the merits of his PCRA petition. In its Opinion supporting the adjudication, the PCRA court rejected the Commonwealth's claim that Fanase waived his appellate rights, holding as follows:

> Unfortunately for the Commonwealth, because the very nature of the appeal is that trial counsel did not follow up on legitimate issues meriting appeal, the Commonwealth's position will not prevail.

(Slip Op., Craig, J., 3/17/95, p. 2.)

Thus, as the Opinion indicates, the PCRA court reinstated Fanase's appellate rights exclusively on the basis that "trial counsel did not follow up on legitimate issues meriting appeal." Contrary to this suggestion, however, our law has never provided that the reinstatement of appellate rights automatically follows a failure to appeal.

We considered a case quite similar to the one presently before us in *Commonwealth v. Lehr*, 400 Pa.Super. 514, 583 A.2d 1234 (1990). In *Lehr*, no direct appeal was taken from the judgment of sentence imposed following appellant's conviction for homicide by vehicle and related charges. As here, the appellant in *Lehr* filed a PCRA petition asserting 14 bases of relief, the last of which alleged "Counsel for the defendant failed to appeal to the Superior Court." *Id.* at 515, 583 A.2d at 1235. We began our analysis by noting that, to be eligible for relief under the PCRA, a petitioner must *plead* and *prove:*

> (3) That the allegation of error has not been previously litigated and one of the following applies:

> (i) The allegation of error has not been waived.

> (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

*Id., citing* 42 Pa.C.S. § 9543(a)(3).

We also discussed, as follows, appellant's failure to appeal:

[A]bsent extraordinary circumstances, the failure to file a direct appeal from a judgment of sentence amounts to waiver of any claim which could have been raised in such an appeal, thereby precluding collateral relief. Now, in an attempt to circumvent the consequences of his failure to appeal from the judgment of sentence imposed upon him, the appellant alleges that counsel was ineffective for failing to file and pursue a direct appeal. To successfully avoid a finding of waiver, the appellant "must prove that he requested an appeal and that counsel disregarded the request."

*Lehr, supra* at 515, 583 A.2d at 1235 (citations omitted).

Turning to the *Lehr* PCRA hearing, we found that appellant and trial counsel offered contradictory testimony as to whether appellant requested an appeal. *Id.* Since credibility is a determination left to the trial court, which had found appellant's version incredible, we held as follows:

Thus, because the appellant has failed in meeting his burden of showing that he requested an appeal and that counsel disregarded the request, the issues presented instantly ... are deemed waived.

*Id.* at 517, 583 A.2d at 1236.

■ As section 9543 of the PCRA and *Lehr* indicate, a petitioner bears the burden of "pleading and proving" that his request for an appeal was ignored or rejected by trial counsel. Mere allegation is simply insufficient.

■ Instantly, Fanase's failure to carry his burden of proof is even more apparent than that which occurred in *Lehr*. The appellant in *Lehr* testified and elicited testimony from trial counsel on the relevant issue, thus enabling the PCRA court

to consider credibility. On the other hand, Fanase neither testified nor asked trial counsel a single question concerning the failure to appeal. Further, in his appellate brief, Fanase fails to discuss, or even mention, the very issue upon which the PCRA court reinstated his appellate rights. In short, Fanase has not offered a scintilla of evidence that he requested an appeal or that trial counsel failed to honor the request. Thus, as we said in *Lehr*, "[b]ecause the appellant has failed in meeting his burden of showing that he requested an appeal and that counsel disregarded the request, the issues presented instantly ... are deemed waived." *Lehr, supra* at 517, 583 A.2d at 1236. Fanase may not now avoid a finding of waiver simply by claiming that trial counsel was ineffective for failing to file and pursue a direct appeal. *Id.; see also Commonwealth v. Hudson*, 336 Pa.Super. 174, 485 A.2d 487 (1984).

Lastly, we note that appellant was clearly aware of his right to appeal the February 26, 1992 judgment of sentence. The colloquy following the imposition of sentence reads as follows:

MR. FOGLIA [Defense Counsel]: Do you want me to give him the appeal rights, Your Honor?

THE COURT: Yes, you may.

MR. FOGLIA: Mr. Fanase, do you understand you have ten days from today to ask the court to reconsider your sentence?

Do you understand that?

THE DEFENDANT: Yes.

MR. FOGLIA: If you cannot afford a lawyer, a lawyer will be appointed to you by the court free of charge.

Do you understand that?

THE DEFENDANT: Yes.

MR. FOGLIA: Do you understand what your appeal rights are?

THE DEFENDANT: Yes.

MR. FOGLIA: Do you understand that on these cases the appeal rights were set forth in the form on those four basic grounds which I explained to you before?

THE DEFENDANT: Yes.

MR. FOGLIA: Do you want me to repeat those grounds at all?

THE DEFENDANT: No.

(N.T., 2/26/92, pp. 12–14.) Based on the foregoing, we agree with the Commonwealth that the PCRA court erred in reinstating Fanase's appellate rights in the absence of any evidence that he requested an appeal or that trial counsel disregarded the request.

Moreover, since the issue of waiver is now finally litigated, Fanase may not pursue the issue in a subsequent PCRA petition. *See* 42 Pa.C.S. § 9543(a)(3) ("To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence . . . (3) That the allegation of error has not been previously litigated. . . ."); *see also Commonwealth DeHart,* 539 Pa. 5, 650 A.2d 38 (1994).

■ Nonetheless, having considered Fanase's underlying issues, we agree with the PCRA court that they are without merit. In order to prevail on his claims alleging ineffectiveness of trial counsel, Fanase must show: "(1) the underlying claim is of arguable merit; (2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

■ Initially, Fanase claims trial counsel was ineffective for failing to request an alibi instruction. However, Fanase's wife, the only alleged alibi offered, was uncertain as to important facts on the night of the burglary. For instance, while Mrs. Fanase testifies on direct examination that her stepson borrowed the car on July 2, 1990 and her husband therefore could not have driven it to the burglary, she admitted on cross-examination that she "could have been" (N.T., 12/10/91, p. 224) referring to another night. Based on this testimony, the PCRA court, whose job it was to assess credibility, concluded that Mrs. Fanase "was less than certain if Petitioner was home at the exact time the crime occurred." (Slip Op.,

Craig, J., 3/17/95, p. 3.) Thus, since sufficient evidence of alibi was not presented, no alibi instruction was required. *Commonwealth v. Repaci*, 419 Pa.Super. 591, 615 A.2d 796 (1992). Finally, we note that Fanase failed to provide record notice to the Commonwealth of his intent to present an alibi defense, as required by Pa.R.Crim.P. 305. This default may also operate to waive the right to an alibi instruction. *Commonwealth v. Poindexter*, 435 Pa.Super. 509, 523, 646 A.2d 1211, 1218 (1994) ("The right to present evidence of an alibi and to receive a jury instruction therefrom, however, is not absolute. In order to obtain this right, a defendant must comply with the notice requirement set forth in rule 305. . . ."). Thus, Fanase's first ineffectiveness claim fails under prong one of *Pierce* because it lacks arguable merit.

■ Next, Fanase claims his trial counsel was ineffective for failing to request a no-adverse-inference charge based on Fanase's refusal to testify. The no-adverse-inference charge, as set forth in section 3.10(A) of the Pennsylvania Standard Criminal Jury Instructions, provides as follows:

3.10A (Crim) DEFENDANT'S FAILURE TO TESTIFY NOT EVIDENCE OF GUILTY

It is entirely up to the defendant in every criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt from the fact that the defendant did not testify.

Our Supreme Court has repeatedly stated that "as a matter of Pennsylvania constitutional law, as under the United States Constitution, criminal defendants in this Commonwealth are entitled to a 'no-adverse-inference' jury instruction, when a timely request is made to the trial court." *See e.g., Commonwealth v. Lewis*, 528 Pa. 440, 447, 598 A.2d 975, 979 (1991).

Instantly, the trial court charged Fanase's jury as follows:

The fundamental principle of our criminal justice system is that a person accused of a crime, the defendant, is presumed to be innocent. The mere fact that the defendant was arrested and accused of a crime is not any evidence

against the defendant. In addition, there is no inference of guilt created by the fact that there is an information or even a trial.

Furthermore, the defendant is presumed innocent throughout the trial unless and until you can conclude based on careful and impartial consideration of the evidence that the Commonwealth has proved the defendant guilty beyond a reasonable doubt.

A person accused of a crime is not required to present evidence or prove anything in his own defense. If the Commonwealth fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty ...

To summarize, you may not find the defendant guilty based on the mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, the defendant is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden then you must find the defendant not guilty.

(N.T., 12/11/91, pp. 286–288.)

In rejecting Fanase's claims, the PCRA court found that this charge was an adequate substitute for the no-adverse-inference charge because "[t]he above instruction is virtually standard for all Allegheny County [and] is far more extensive than § 3.10(a) of the Pennsylvania Standard Criminal Jury Instructions." (Slip Op. at 6.)

In *Lewis,* our Supreme Court explicitly rejected, as follows, the argument relied on by the PCRA court:

In the instant case, the District Attorney argues that, even absent a specific "no-adverse-inference" charge, the trial court accomplished the same general goal by indirection. The District Attorney states that the trial court repeatedly instructed the jury that defendant had no burden of proof at all, and instructed the jury that the burden of proof rested

upon the Commonwealth to establish the guilt of the defendant beyond a reasonable doubt. The court made clear that the jury's verdict could only be based upon evidence that they heard from the witness stand....

Such an argument, however, misses the mark. The specific constitutionally mandated "no-adverse-inference" charge may not be replaced by a patchwork of less direct instructions. The entire premise underlying our requirement of the "no-adverse-inference" charge to the jury, under Article I, Section 9, is that the trial judge is vested with an *obligation* to protect the defendant's right to remain silent, free from the insidious danger of adverse inference presented by a jury left free to wander in speculation. Experience teaches us that the very *exercise* of an individual's right not to testify, under Article I, Section 9, may *endanger* that right if the jury is left free to draw negative inferences from the defendant's decision to exercise his or her constitutional privilege. The trial court, being in a unique position to protect a defendant's constitutionally secured right through the jury charge, is the only bulwark to ensure that the exercise of a fundamental right does not turn into an act of constitutional suicide. Having determined in this Commonwealth that a "no-adverse-inference" charge is necessary to secure the guarantees of Article I, Section 9, the judge has either given the charge or he has not. Make-shift substitutes will not suffice. Juries must be told in no uncertain terms that no adverse inference may be drawn from a defendant's failure to take the stand; otherwise, we are left to mere guesswork as to the meaning juries have ascribed to tangentially related words of the court.

*Id.* at 450, 598 A.2d at 979–980 (footnote omitted);[4] *see also Commonwealth v. Howard,* 538 Pa. 86, 98, 645 A.2d 1300, 1306

4. We note that *Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975 (1991), was decided on October 31, 1991 and, since Fanase's trial did not commence until December 9, 1991, the *Lewis* mandate was applicable. Further, the cases relied on in *Lewis,* including *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), and a line of Pennsylvania cases emphasizing the importance of a no-adverse-infer-

(1994) (refusing to recognize "an indirect, piecemeal approach" to delivering the no-adverse-inference charge).

█ Based upon the fundamental principles enunciated in *Lewis*, we find that trial counsel improperly failed to request a no-adverse-inference charge. Fanase's claim therefore has arguable merit. However, as noted above, this conclusion does not end our *Pierce* inquiry.

As to the second prong of *Pierce*, whether trial counsel had a reasonable basis in failing to request a no-adverse-inference instruction, we find that he did not. We are, of course, aware that defense counsel's request that no such instruction be given may be a reasonable trial strategy under certain circumstances. *See e.g., Commonwealth v. Edwards*, 535 Pa. 575, 637 A.2d 259 (1994) ("defendant and his or her counsel [may] determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence."). However, this principle is irrelevant presently because counsel made no request that a charge not be given. Indeed, counsel's failure to request, or not request, the charge had nothing to do with trial strategy and was based instead on his belief that a no-adverse-inference charge "is a standard jury instruction given by the judge." (N.T., 11/2/94, p. 13.) Hence, counsel's failure to request the instruction had no reasonable basis.

█ As noted, the third prong of *Pierce* requires that Fanase demonstrate that he was prejudiced by trial counsel's conduct. Under *Pierce* and its progeny, a defendant is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it "could have reasonably had an adverse effect on the outcome of the proceedings." *Pierce, supra* at 162, 527 A.2d at 977. This standard is different from the harmless error analysis typically applied

ence charge, were clearly available to the trial court and both parties. *See Commonwealth v. Howard*, 538 Pa. 86, 97–98, 645 A.2d 1300, 1306 (1994) ("*Although appellant's trial was conducted before Lewis was decided by the Court* ... the general principles on which *Lewis* was based were enunciated in *Carter* and were readily available to trial counsel and the trial court.").

▮

when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), states that "[w]henever there is a *'reasonable* possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Id.* at 408, 383 A.2d at 164 (citations omitted). This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's sixth amendment right to counsel. *Pierce, supra.*

Fanase's ineffectiveness claim fails under this analysis. His sole assertion of prejudice reads as follows:

[B]ecause Appellant Fanase, in the exercise of his constitutional right not to take the stand may have raised jurors speculation as to his innocence, he was prejudiced.

(Appellant–Fanase's brief at 16.)

This statement is clearly insufficient to demonstrate to this Court how in fact Fanase was prejudiced. *Howard, supra* 538 at 101, 645 A.2d at 1309 (holding insufficient a similar bald assertion of prejudice). Nor can we discern from our independent review of the record how Fanase was prejudiced. *Id.* Therefore, because he has not satisfied the third prong of *Pierce*, Fanase's claim fails.

▮ Finally, Fanase claims that his right to a fair trial was prejudiced by the following statements of a police officer, on direct examination:

Q  Now, after you got the report concerning this burglary, what did you do?

A   We made a back up on it, went out and did an investigation on it, contacted the witness in this case and put together a photo spread; showed him a photo spread that he picked out [sic] the actor out of the photo spread. With that, we secured a warrant and we went looking for Mr. Fanase.

Q   How did you put together that photo array?

A   I got Mr. Fanase's photograph and I had other pictures in our files that I thought were similar as part of a photo spread.

(N.T., 12/10/91, pp. 160–161.)

Specifically, Fanase claims that the reference to "other pictures in our files" raised an improper inference of past criminal conduct. We disagree. Initially, we note that the "other pictures in our files" referred to photographs of other individuals, which were then placed with Fanase's to make the photo spread. Thus, appellant's true claim is that the statement "I got Mr. Fanase's photograph" somehow indicated past criminal conduct. Again, we disagree. As we stated in *Commonwealth v. Brown*, 511 Pa. 155, 512 A.2d 596 (1986),

One's picture may be in the possession of the police even though the person was neither charged, tried nor convicted of any crime.

Leaving aside the fundamental logic that a previous record does not prove present guilt, the possession by the police of one's photo does not ineluctably prove a previous *conviction*. At the most it proves only that the police had a photo of the defendant on file.

*Id.* at 156, 512 A.2d at 596.

Further, even assuming that the vague reference to getting "Mr. Fanase's photograph" somehow prejudiced Fanase, the prejudice was cured by the following exchange, which occurred immediately after a sidebar called by defense counsel to discuss the reference to Fanase's photos:

Q   [BY THE DISTRICT ATTORNEY]: Detective, now, the reason that you had this photograph of Mr. Fanase

[was] because he was identified as being the owner of a car;  correct?

A    That's correct.

(N.T., 12/10/91, p. 162.)   Thus, Fanase's final claim fails.

Based on the foregoing, although we find that the PCRA court improperly reinstated Fanase's appellate rights because those rights had been waived, we nevertheless affirm its denial of his PCRA claims.   The February 26, 1992 judgment of sentence is therefore affirmed.

Judgment of sentence affirmed.