**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Brian HAWKINS, Appellee.**

Superior Court of Pennsylvania.

Submitted July 7, 2003.

Filed April 19, 2004.

Nicholas J. Casenta, Asst. Dist. Atty., West Chester, for Com., appellant.

Thomas E. Naughton, West Chester, for appellee.

Before: LALLY–GREEN, BOWES, and OLSZEWSKI, JJ.

BOWES, J.:

¶ 1 The Commonwealth appeals from the January 8, 2003 order granting Appellee, Brian Hawkins, PCRA relief in the form of a new trial. After careful consideration of the relevant facts and applicable law, we are constrained to affirm.

¶ 2 The trial evidence presented in this case was strikingly extensive and virtually damning. On July 23, 1999, Devon Mayer was living at 420 North Everhart Street, West Chester, with her boyfriend, Bill Fahey, their son, and Helena Wiley. Around 1:30 a.m., Ms. Mayer was in the apartment watching television and socializing with some friends, who included Ms. Wiley, Justin Bradley, Thomas Barrett, Tara Moran, Quiana White, and Josh Kenner. Anthony Mina had been in the apartment earlier but had left with Mr. Fahey. Three men, one of whom was armed with a shotgun, suddenly entered the apartment together. Ms. Mayer identified the man with the gun as Carl Randolph Hedgepeth, Appellee's co-defendant. Hedgepeth wore a mask but was identifiable from his eyes. Appellee had no covering on his face. The third man, who was not identified, wore a white hooded sweatshirt with the hood pulled up to obscure his face.

¶ 3 As the three men entered the apartment, Ms. Mayer heard a gun cock. She raced toward the bathroom to hide, but Appellee stopped her. Appellee asked Ms. Mayer where he could find Mr. Fahey. When Ms. Mayer indicated Mr. Fahey was not present, Hedgepeth recognized her as Mr. Fahey's girlfriend, placed a gun against Ms. Mayer's head, and demanded drugs and money. Ms. Mayer complied.

¶ 4 The men left after they took the money and drugs, and Ms. Mayer grabbed her son and went out onto the apartment's balcony, yelling that someone should call the police. At that point, Mr. Fahey and Mr. Mina arrived in a pick-up truck, and Mr. Mina began to chase the three men, who were running from the apartment building.

¶ 5 The day after the incident, Ms. Mayer went to the police station to look at a photographic array prepared by police. The transcript indicates the following:

Q. At that point, when you were shown those photographs, was there anyone in those photographs that you recognized?

A. Yes.

Q. Who was that that you recognized?

A. Brian.

Q. Meaning Brian Hawkins?

A. Yes.

Q. And he was one of the ones who was in the apartment?

A. Yes.

Q. And how certain are you that he was one of the men in your apartment?

A. A hundred percent.

Q. Did he have anything covering his face -

A. No.

N.T. Trial Vol. I, 2/15/00, at 25.

¶ 6 Helena Wiley testified that at approximately 1:30 a.m. on the morning in question, she was standing on the balcony to the apartment when she saw three men

walking into the apartment complex with their heads down. She went into the bathroom, and a few minutes later, Ms. Mayer opened the door, told her something was happening, and shut the door. Then, Ms. Wiley heard noise and screaming. She opened the bathroom door just as Ms. Mayer came around the corner followed by a man with a gun. Although his face was partially covered, Ms. Wiley recognized the man holding the gun as Hedgepeth, whom she had met earlier that summer. She did not see the other participants in the robbery. She identified Hedgepeth's photograph during an array later that morning. Ms. Wiley testified at trial that she was "very certain" that Hedgepeth was the man who held the gun during the robbery. *Id.* at 70.

¶ 7 Quiana White testified that at approximately 1:00 a.m. on July 23, 1999, she was at the Spare Rib Bar with Hedgepeth, and she asked him to drive her to Ms. Mayer's apartment so that she could purchase drugs. They left in Hedgepeth's gray car with another man, whom Ms. White identified only as Victor. On the way to the apartment, Ms. White and Hedgepeth "bumped into Brian Hawkins." *Id.* at 85. Ms. White knew both men well, explaining that she "grew up with both [Appellee and Hedgepeth.]" *Id.* at 87. Appellee entered the car, and they drove to Ms. Mayer's apartment. Hedgepeth and Appellee left after Ms. White exited the car. When she arrived at the Mayer apartment, she was not able to purchase drugs but remained at the apartment to socialize with her cousin, Josh Kenner.

¶ 8 Shortly after being dropped off, Ms. White was sitting on a couch talking with Mr. Kenner when she was pushed aside. Ms. White testified, "Brian Hawkins had come up to my cousin and was pattin' my cousin down in his pockets, and I stood up and pushed Brian. I said, 'What are you

doing, you know what I mean?'" *Id.* at 89. Then, Hedgepeth put a gun in her face and told her to sit down.

¶ 9 Ms. White said that she recognized Hedgepeth from his voice and she recognized Appellee because he was not attempting to hide his face. Ms. White did not inform police about the identity of the armed robbers on the night in question because they were her friends, she has children, and she feared retribution if she identified the two men.

¶ 10 Justin Bradley was another victim of the robbery. Mr. Bradley observed the three men enter together and demand money and drugs from everyone in the apartment. Mr. Bradley testified that he observed Appellee reach into a number of people's pockets, including his own, and that Appellee took his wallet containing twenty dollars.

¶ 11 Thomas Barrett also was present during the robbery. He stated that three men pushed their way into the apartment and demanded drugs, jewelry, and money from everyone present. Mr. Barrett confirmed that two of the men had their faces covered but that the third man "didn't have anything on his face so I could see his face .... I saw him going through one of my friend's [Mr. Bradley's] pockets as the other guy had the gun in people's faces and stuff." N.T. Trial Vol. II, 2/16/00, at 161. Mr. Barrett testified that he got a "[p]retty good look" at the man without the mask and later identified Appellee as that man during a photographic array at the police station. *Id.* at 163. Mr. Barrett indicated that he was absolutely certain that Appellee was the man who went through Mr. Bradley's pocket.

¶ 12 In rebuttal, Johnette Miller testified that Appellee, her boyfriend, was babysitting their children while she went to work from 11:00 p.m. on July 22, 1999, to

7:00 a.m. on July 23, 1999. Appellee testified consistently.

¶ 13 Based on this evidence Appellee was convicted of two counts of robbery, five counts of reckless endangerment, and one count each of terroristic threats, burglary, and conspiracy. On April 5, 2000, he was sentenced to six and one half to fourteen years imprisonment. We affirmed on direct appeal. *Commonwealth v. Hawkins*, 769 A.2d 1204 (Pa.Super.2000). Appellee filed a timely PCRA petition, and counsel was appointed. Counsel filed an amended PCRA petition, and following a hearing, the trial court granted Appellee a new trial based on its determination that trial counsel was ineffective for failing to request an alibi instruction. This appeal by the Commonwealth followed.

■ ¶ 14 We are presented with the issue of whether counsel was ineffective for failing to request an alibi instruction. The well-known three-part test for determining whether trial counsel was ineffective is as follows:

> The law presumes that counsel has rendered effective assistance. *See Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341 (2000). Therefore, to prevail on an ineffectiveness claim, [the defendant] must demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) he was prejudiced by counsel's ineffectiveness, i.e., that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *See Commonwealth v. Douglas*, 558 Pa. 412, 737 A.2d 1188, 1199 (1999).

*Commonwealth v. Brooks*, 576 Pa. 332–, ——, 839 A.2d 245, 248 (2003).

¶ 15 In the instant case, the Commonwealth vociferously argues that a new trial is not warranted because counsel had a reasonable basis for his decision not to request an alibi instruction and because, due to the overwhelming evidence presented against Appellee, there was no prejudice. Thus, the Commonwealth argues that neither the second nor the third prong of the above test was satisfied in this case. While the Commonwealth is correct with regard to its latter argument, the current law in this area does not permit either a finding that Appellee was not prejudiced or a finding that counsel had a reasonable strategy.

■ ¶ 16 Initially, we find that the underlying issue has merit and the first prong of the test is therefore satisfied. Appellee presented evidence that he was in another location at the time of the robbery; this alibi evidence was sufficient to warrant an alibi instruction. *Commonwealth v. Willis*, 520 Pa. 289, 553 A.2d 959 (1989); *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980).

¶ 17 Our Supreme Court has set forth the following standards to be used in assessing whether the second prong of the ineffective assistance of counsel test has been satisfied:

> Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. Trial counsel will not be deemed ineffective for failing to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful. Nor can a claim of ineffective assistance generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. A finding

that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Howard,* 553 Pa. 266, 719 A.2d 233, 237 (1998) (citations omitted).

¶ 18 A review of the pertinent case law reveals that every reason offered by counsel in the present case for his failure to request an alibi instruction has previously been rejected by the appellate courts as a reasonable strategy for not requesting an alibi instruction.

¶ 19 Johnette Miller testified that on the night of the robbery, when she left for work at 10:30 p.m., Appellee was at home babysitting her three children and that she worked from 11:00 p.m. to 7:00 a.m. That was the only direct testimony presented by Ms. Miller. N.T. Trial Vol II, 2/16/00, at 240–42. On cross-examination, the district attorney questioned how Ms. Miller knew that Appellee remained at home with the children after she left him at 10:30 p.m. Ms. Miller insisted that she knew that he was at home while she was at work because she called home during her break, and Appellee answered the telephone.

¶ 20 The district attorney immediately requested a sidebar conference and said:

Your Honor, I just want to put on the record that I had requested of counsel whether or not [the testimony of Ms. Miller] was an alibi defense. I was told it was not. There has been testimony just now by this witness that she called and he was home when she was on her break. I'm not saying counsel knew this, I'm just saying there was no alibi defense filed in this case, and I believe that is what this testimony is right now, and I would ask that it be stricken and that witness not be permitted to testify.

*Id.* at 244. Defense counsel acknowledged that he had not presented notice of an alibi defense.[1] While maintaining that the district attorney opened the door to the alibi evidence, defense counsel agreed not to seek an alibi instruction, *id.* at 245, in order to avoid having that testimony stricken.[2]

■ ¶ 21 Appellee not only neglected to give the Commonwealth advance notice of his intent to present alibi evidence, but Appellee actually informed the Commonwealth that Ms. Miller was not going to

---

1. Pa.R.Crim.P. 573 governs pretrial discovery in criminal matters. Subsection (C)(1) of that rule relates to mandatory disclosure by the defendant and provides in relevant part:

   (a) Notice of Alibi Defense:
   A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 578, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.

2. Pa.R.Crim.P. 573(C)(1)(d) sets forth the consequences of a defendant's failure to notify the Commonwealth in advance of an alibi defense:

   If the defendant fails to file and serve notice of alibi defense or insanity or mental infirmity defense as required by this rule, or omits any witness from such notice, the court at trial may exclude the testimony of any omitted witness, or may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

present alibi evidence. Meanwhile, Ms. Miller's entire testimony consisted of informing the jury that she left Appellee at home at 10:30 p.m. baby-sitting her three children and worked from 11:00 p.m. to 7:00 a.m., within the time frame of the robbery. This constituted alibi evidence. Alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and at a sufficient distance that he could not have committed the crime. *Commonwealth v. Roxberry,* 529 Pa. 160, 602 A.2d 826 (1992); *Pounds, supra.* The unequivocal implication presented by Ms. Miller's direct testimony was that Appellee was at home baby-sitting her children when the robbery occurred.

¶ 22 At the PCRA hearing on Appellee's ineffectiveness claims, counsel explained why he had not provided advance notice of an alibi defense. First, counsel stated that in his extensive conversations with Ms. Miller, she did not indicate that she could provide an alibi defense for Appellee. Counsel explained that Ms. Miller told him that she was at work but never told him that she had called home and had spoken with Appellee during the time frame of the robbery. Counsel further indicated:

> With respect to Mr. Hawkins, I am not required to list the defendant as an alibi witness under the rules, and under the law. So I didn't certainly file an alibi listing him as one. I am not required to do that.

> I did not request an alibi instruction, although I understand that and I am aware certainly that when a defendant testifies that he wasn't present you can ask for such an instruction. It's been my practice generally having tried, many, many cases involving alibis, that in speaking to jurors after trials, jurors have an impression that an alibi means that you are bringing in independent

witnesses, that's what their connotation, what they understand it to be. And even in cases where I have other witnesses coming in as alibi, jurors generally look for something a little better than [a] family member or whatever.

> I don't like to give jurors the impression that they be looking for that type of thing when you hear the word alibi. They are either going to believe the defendant or not. There are instructions on credibility. They are either going to believe he was there or not there. In my opinion, at least, you don't need that extra, what could be a confusing factor of instruction on alibi when only the defendant is testifying.

> Now, it's just my personal preference in how I like to try a case. Because jurors I talk to when you mention alibi, they are looking for that independent alibi witness, or time sheets from work, or something that really shows someone was definitely somewhere else at the time of the incident. I'd rather not confuse them and let them think if you are mentioning alibi why isn't there this other corroboration at the time.... That's my impression talking to juries for 20 some years of practice.

> Q. Your defense in this case was what?
> A. Misidentification, number one. And, number two, that obviously Brian wasn't there and didn't commit the crime.

N.T. PCRA Hearing, 12/18/02, at 16–19.

¶ 23 While these portions of the record indicate that counsel herein had several reasons for not requesting the instruction, these reasons have been determined to be unreasonable in the pertinent case law. In *Commonwealth v. Roxberry,* 381 Pa.Super. 314, 553 A.2d 986 (1989) aff'd, *Roxberry, supra,* counsel did not ask for the instruction because defendant's alibi evidence was not corroborated by a disinterested wit-

ness, who failed to respond to a subpoena and whom counsel intended to present. However, since *Pounds, supra,* holds that the uncorroborated alibi testimony of a defendant is sufficient to compel an alibi instruction, we held in *Roxberry* that this explanation evidenced a misunderstanding of the relevant law and clearly was not strategically sound.

¶ 24 In *Commonwealth v. Allison,* 424 Pa.Super. 341, 622 A.2d 950 (1993), we indicated that other instructions concerning the Commonwealth's burden of proof do not adequately cover the concept outlined in the alibi instruction and that counsel could not be reasonable in relying on those instructions when deciding not to request an alibi instruction. In *Commonwealth v. Mikell,* 556 Pa. 509, 729 A.2d 566 (1999) and *Commonwealth v. Brunner,* 341 Pa.Super. 64, 491 A.2d 150 (1985), counsel's decision not to request the instruction based on counsel's disbelief of the alibi evidence was rejected as unsound. *Mikell* also indicates that counsel cannot reasonably decide to forgo the alibi instruction merely because counsel decided to focus on another defense or based on the fact that a standard instruction on credibility was given.

¶ 25 In this case, the transcript of the ineffectiveness hearing establishes that counsel did not present advance notice of an intended alibi defense because he did not view Ms. Miller as an alibi witness. However, Ms. Miller's testimony consisted solely of placing Appellee at her home during the commission of the crime which is alibi testimony. She had no other function at trial except to provide an alibi. Once counsel knew she was to be a witness, notice was compelled by Pa.R.Crim. 573. Apparently, counsel did not particularly credit her testimony; however, the case law rejects counsel's qualms about the believability of alibi evidence as · valid

grounds for not seeking the alibi instruction.

¶ 26 Counsel in the present case also elected to forgo the instruction based on Appellee's testimony because he decided not to confuse the jury with an alibi instruction and to instead defend Appellee on the basis of misidentification. The above-cited precedent states it is not a reasonable trial strategy to forego an alibi instruction to focus on another defense. Finally, counsel's suggestion that the court's charge on credibility was sufficient has also been rejected in the case law, which holds that other instructions do not adequately cover the concept delineated in an alibi instruction. Thus, the second prong of the ineffectiveness test, that counsel's course of conduct was without reasonable basis designed to effectuate his interest, was also met.

¶ 27 The final consideration is whether Appellee was prejudiced by counsel's deficient representation to one extent that the outcome of one proceeding might have been different. A review of the applicable law indicates that the third prong of the standard ineffectiveness test is not employed in this setting. We are virtually compelled to presume prejudice, notwithstanding the quantum of evidence presented against him, when the defendant does not receive an alibi instruction. In *Commonwealth v. Roxberry, supra,* our Supreme Court held that a defendant was inherently prejudiced by trial counsel's unexplained failure to request an alibi instruction. *See also Commonwealth v. Mikell, supra; Commonwealth v. Allison, supra; Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333 (1990). These cases hold that counsel's failure to request an alibi instruction is prejudicial *per se* even when substantial evidence of guilt is presented to ensure that a jury does not interpret the failure to prove the alibi de-

fense as determinative of a defendant's guilt. *Mikell, supra.*

¶ 28 The trial evidence indicated the following. Appellee did not have any covering on his face during the robbery. Four victims identified him. One eyewitness had known Appellee her whole life and saw Appellee in the company of his accomplice, Hedgepeth, fifteen minutes before the robbery. The evidence in this case simply was overwhelming, and if the law permitted us to properly apply the test for establishing the ineffective assistance of counsel, we would easily conclude that counsel's actions did not prejudice Appellee. However, in the context of a failure to request an alibi instruction, our Supreme Court precedent provides that the third leg of the ineffective assistance of counsel test cannot be employed by reasoned analysis of the evidence presented against the defendant.

¶ 29 As Judge Johnson eloquently noted in his dissenting opinion in *Gainer, supra* at 339–40:

The *per se* [prejudice] rule established first in *Brunner* and followed in *Commonwealth v. Nauman,* 345 Pa.Super. 457, 498 A.2d 913 (1985) and *Roxberry,* [553 A.2d 986 (Pa.Super.1988)], would compel a trial judge to give an alibi charge regardless of the circumstances and regardless of the wishes of the defendant or defense counsel. In both *Brunner* and *Nauman,* the opinion writer concluded that there could be no reasonable basis for failing to request an alibi instruction. In *Brunner,* defense counsel testified at the PCHA hearing that he did not request a specific alibi instruction because he did not believe the alibi witness. Counsel may well have feared that focusing the jury's attention on patently false alibi evidence could have diverted the jury from considering some other plausible aspect in

the case more favorable to the defendant.

If I understand the thrust of *Brunner, Nauman* and *Roxberry,* those cases conclude that there can be no reasonable basis for not wanting an alibi charge, and that this decision is too important to be left to the defendant and defense counsel. I cannot agree.

Moreover, if the *per se* command of *Roxberry* is to be followed, it would appear that the "prejudice" review found in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and carried forward in this jurisdiction in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), would no longer apply, even where defense counsel finds the alibi testimony incredible, as in *Brunner....*

¶ 30 In the weightier framework of a constitutional right, the right to remain silent, the courts did not apply a prejudice *per se* standard. *Commonwealth v. Fanase,* 446 Pa.Super. 654, 667 A.2d 1166 (1995). In *Fanase,* we addressed a defendant's claims that trial counsel was ineffective for failing to request a "no adverse inference" charge. We noted that under both the Pennsylvania and United States Constitutions, defendants are entitled to a "no adverse inference" charge and that defendant presented a meritorious argument that he was entitled to the charge because he had not testified. We also found specifically that trial counsel did not have a reasonable strategy for failing to request the charge. However, in refusing to grant a new trial, we concluded that defendant had failed to establish that the outcome at trial would have been different had the charge been given, and ruled that the third prong of the ineffectiveness standard outlined in *Pierce* had not been satisfied. *See also Commonwealth v. Stanley,* 830 A.2d 1021 (Pa.Super.2003).

¶ 31 In this case, in light of the overwhelming evidence of Appellee's guilt, it is not reasonably probable that, but for the omission of the instruction, the outcome of the trial would have been different. This panel has reservations about an approach that abandons the third leg of the ineffective assistance of counsel test merely because an alibi instruction was not given when such an approach is not even employed in a context where an instruction is constitutionally mandated. *Pierce* is the test developed to assess whether trial counsel is ineffective and should be employed herein.

¶ 32 While we are concerned about this as a troublesome development in an isolated area of the law, we nonetheless are aware of our responsibility to apply the law promulgated by the Supreme Court. Hence, we are compelled to affirm the trial court's decision to grant a new trial.

¶ 33 Order affirmed.

¶ 34 Judge OLSZEWSKI files a Concurring Opinion.

OLSZEWSKI, J., concurring:

¶ 1 While I concur in the result reached by my colleagues, I cannot join in the discussion questioning the *per se* prejudice rule.

¶ 2 First, it is now a well-established precedent (both by our Supreme Court and the Superior Court) that when counsel fails to request an alibi instruction, and appellant is entitled to such an instruction, appellant has been *per se* prejudiced by this omission. *Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980); *Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333 (1990) (en banc), *appeal denied,* 529 Pa. 645, 602 A.2d 856 (1992); *Commonwealth v. Roxberry,* 381 Pa.Super. 314, 553 A.2d 986 (1989), *aff'd,* 529 Pa. 160, 602 A.2d 826 (1992).

¶ 3 As the majority concedes, we are required to follow such binding precedent. *See Aivazoglou v. Drever Furnaces,* 418 Pa.Super. 111, 613 A.2d 595, 600 (1992); *Commonwealth v. Crowley,* 413 Pa.Super. 554, 605 A.2d 1256, 1257 (1992).

¶ 4 The majority, however, proceeds to question the wisdom of such a *per se* rule. The majority argues that a *per se* rule is inappropriate in a case such as this where there exists overwhelming evidence of appellant's guilt. I cannot agree.

> We customarily repose great faith in the wisdom and judgment of juries. Because credibility is indisputably the exclusive province of the jury, we cannot properly permit a judge, under the guise of exercising discretion, to remove the alibi issue from the jury merely because the judge finds the evidence incredible. We do not ordinarily doubt a jury's capability of resolving difficult factual questions. Many, if not most, trials require the jury to make extremely meticulous and discriminating assessments of credibility. This jury function is fundamental to our jurisprudence. There is no reason, in the realm of alibis, to abandon our trust in jury verdicts and to grant discretion to a trial judge to deliver or withhold an alibi charge depending on his personal assessment of credibility.

*Commonwealth v. Roxberry,* 529 Pa. 160, 602 A.2d 826, 828–29 (1992).

> Where an alibi defense is presented, such an instruction is necessary due to the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt.

*Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597, 603 (1980) (citations and footnote omitted).

> For the jury to be given evidence of alibi and not to be told of its significance, i.e.,

how to use it, is to impair the jury's ability to return a reliable verdict.

*Commonwealth v. Gainer,* 397 Pa.Super. 348, 580 A.2d 333, 337 (1990) *(en banc),* *appeal denied,* 529 Pa. 645, 602 A.2d 856 (1992).

> The [alibi] instruction is necessary so that a failure of the jury to believe the alibi testimony will not be translated into a finding of guilt.... His omission, as all the decided cases recognize, was a fundamental error which may have influenced the jury's verdict to appellant's prejudice.

*Commonwealth v. Roxberry,* 381 Pa.Super. 314, 553 A.2d 986, 990 (1989), *aff'd,* 529 Pa. 160, 602 A.2d 826 (1992).

¶ 5 These cases reason that the alibi instruction is necessary when evidence of an alibi is presented because there is a danger that, without the instruction, the jury could misuse the alibi testimony. This danger exists regardless of the amount of evidence implicating the defendant. Accordingly, failure to request an alibi instruction is *per se* prejudicial to a criminal defendant.

¶ 6 The majority analogizes the *per se* prejudice rule with the rule for a "no-adverse-inference" instruction regarding the right to remain silent. Criminal defendants who do not testify at trial are entitled to a "no-adverse-inference" jury instruction. *Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975, 979 (1991). A criminal defendant entitled to such an instruction may waive his right to the instruction provided that a colloquy is conducted on the record. *Commonwealth v. Thompson,* 543 Pa. 634, 674 A.2d 217 (1996). When trial counsel fails to request the instruction (or fails to request the colloquy), an appellant must still show prejudice in order to prevail on a claim of ineffective assistance of trial counsel. In essence, failure to request the instruction or the colloquy is

not *per se* prejudicial to the criminal defendant. *Thompson,* 674 A.2d at 221–22; *Commonwealth v. Stanley,* 830 A.2d 1021, 1027 (Pa.Super.2003). *See also Commonwealth v. Fanase,* 446 Pa.Super. 654, 667 A.2d 1166 (1995).

¶ 7 The majority believes that because a defendant is required to show prejudice when asserting trial counsel ineffectiveness for failing to request the "constitutionally mandated" "no-adverse-inference" instruction, a defendant should also be required to show prejudice when trial counsel fails to request an alibi instruction. This argument is unsound.

¶ 8 A no-adverse-inference instruction is given to protect the rights of a criminal defendant when that defendant does *not* testify. Accordingly, there is no testimony from the defendant for the jury to inappropriately use during deliberations. Further, our Supreme Court has recognized that the instruction may not be required in all cases.

> We are mindful that, for strategical reasons, a defendant and his or her counsel may determine that defendant's right to remain silent under Article I, Section 9 is best served by requesting that a "no-adverse-inference" charge *not* be given to the jury, in order to avoid drawing attention to defendant's failure to testify. The "fundamental" right at stake here is the right not to be "compelled to give evidence against [oneself]" from which the "no-adverse-inference" rule derives. Thus, if defendant and his or her counsel determine that the fundamental right to remain silent is best served by not drawing attention to defendant's silence, the derivative right (i.e., the "no-adverse-inference" instruction), may be validly waived. In such cases, an explicit waiver by defendant is required.

*Thompson*, 674 A.2d at 220 (quoting *Lewis*, 598 A.2d at 983 n. 14) (emphasis in *Lewis*).

¶ 9 Contrary to the "no-adverse-inference" instruction, the alibi instruction was designed to guide the jury in analyzing evidence *actually presented*. Further, prior cases indicate that there is no logical reason for counsel not to seek an alibi instruction when such an instruction is proper. *See e.g. Commonwealth v. Mikell*, 556 Pa. 509, 729 A.2d 566 (1999); and *Commonwealth v. Brunner*, 341 Pa.Super. 64, 491 A.2d 150 (1985). Accordingly, the alibi instruction is distinguishable in purpose and function from the "no-adverse-inference" instruction stemming from a defendant's right not to testify.

¶ 10 For all of the above-stated reasons, I do not agree with the majority's discussion questioning the *per se* prejudice rule.