

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2005

# Fountain v. Kyler

Precedential or Non-Precedential: Precedential

Docket No. 03-4777

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Fountain v. Kyler" (2005). *2005 Decisions.* Paper 589.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/589

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4777

———

CHARLES VINCENT FOUNTAIN,
                                    Appellant

v.

KENNETH D. KYLER;
ATTORNEY GENERAL FOR
THE COMMONWEALTH OF PENNSYLVANIA

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 02-cv-00897)
District Judge: Honorable James M. Munley

———

Argued July 11, 2005

Before:  SLOVITER and McKEE, Circuit Judges,
and FULLAM,* District Judge

(Filed: August 25, 2005)

———

R. Damien Schorr, Esq.(Argued)
1015 Irwin Drive
Pittsburgh, PA 15236

        Attorney for Appellant

———

*       Hon. John P. Fullam, Senior Judge, United States District
        Court for the Eastern District of Pennsylvania, sitting by
        designation.

James P. Barker, Esq. (Argued)
Office of District Attorney
Front & Market Streets
Dauphin County Courthouse
Harrisburg, PA 17101

Attorney for Appellee


OPINION OF THE COURT


SLOVITER, Circuit Judge.

In this case, we are asked to extend the jurisprudence regarding ineffective assistance of counsel to counsel's failure to predict the Pennsylvania Supreme Court's later ruling regarding the non-retroactivity of an amended death penalty statute. We decline to extend the law that far.

Charles Vincent Fountain, who is currently serving a life sentence for a 1976 homicide, appeals from the denial by the United States District Court for the Middle District of Pennsylvania of his application for a writ of habeas corpus. After the District Court's denial, we issued a certificate of appealability ("COA") on the sole issue of whether his "remand counsel was ineffective for advising him not to appeal. . . ." App. at 5. The resolution of this question turns on whether Fountain's remand counsel provided ineffective assistance for advising him not to take an appeal following his remand proceedings due to her belief – that later proved to be erroneous – that the Pennsylvania courts would give retroactive effect to a death penalty statute enacted after Fountain's alleged crime.[1]

**I.**

In order to resolve this matter, we must set forth in some

_____

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 2254; this court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 2253, 2254.

detail the procedural posture of Fountain's case, as well as the various developments in Pennsylvania capital punishment law that occurred in the late 1970's.

In late September 1976, a jury sitting in the Court of Common Pleas for Dauphin County found Fountain guilty on one count of murder in the first degree and on two counts of robbery for the 1976 robbery and murder of Joseph Geller. See generally Commonwealth v. Fountain, 402 A.2d 1014 (Pa. 1979). At sentencing, the jury recommended a punishment of death for the murder conviction. In returning its recommended sentence, the jury utilized the then-applicable death-penalty provisions of Pennsylvania's Sentencing Code. Id. at 1015.

After this bifurcated trial, Fountain's trial counsel requested leave to withdraw. The court granted this request and thereupon appointed Marilyn Zilli, who was then serving as Assistant Public Defender for Dauphin County, to represent Fountain. 402 A.2d at 1015. Zilli represented Fountain in the post-verdict proceedings before the Court of Common Pleas, on Fountain's direct appeal to the Supreme Court of Pennsylvania, and on the subsequent remand to the Court of Common Pleas.

The trial court followed the jury's recommendation and imposed the death penalty on Fountain for the murder conviction; it further imposed two sentences of ten to twenty years for the robbery convictions. 402 A.2d at 1015. Fountain thereafter filed a direct appeal to the Pennsylvania Supreme Court in which he argued, inter alia, that Pennsylvania's death penalty scheme was unconstitutional and that his trial counsel had provided ineffective assistance at both stages of the bifurcated trial. Id. at 1015-16.

Meanwhile, in November 1977, while Fountain's case was pending on direct appeal, the Supreme Court of Pennsylvania held in Commonwealth v. Moody, 382 A.2d 442 (Pa. 1977), that the provisions of the Pennsylvania Sentencing Code pertaining to the imposition of the death penalty were unconstitutional. Specifically, the Moody Court found that the Sentencing Code did not allow a jury to consider sufficiently the particular circumstances of the crime or the character and record

3

of the individual offender. 382 A.2d at 444-49. Of course, the provisions held unconstitutional in <u>Moody</u> were the very provisions that the jury and judge had utilized in determining and imposing Fountain's punishment. On September 13, 1978, in direct response to the <u>Moody</u> decision, the Pennsylvania General Assembly passed a new death penalty sentencing statute to remedy the previous law's constitutional shortcomings.

On July 5, 1979, the Supreme Court of Pennsylvania, relying on its holding in <u>Moody</u>, ruled on Fountain's direct appeal and vacated his death sentence. <u>Fountain</u>, 402 A.2d at 1015 ("<u>Moody</u> . . . requires the vacation of the death penalty imposed in this case and a remand for resentencing."). With respect, however, to Fountain's claims of ineffective assistance of trial counsel, the Court determined that there was "an insufficient record" to resolve those issues and thus remanded the case "to the trial court to conduct an evidentiary hearing on all preserved claims of ineffective assistance of trial counsel." <u>Fountain</u>, 402 A.2d at 1015-16.

Pursuant to this directive, the Court of Common Pleas conducted an evidentiary hearing regarding Fountain's ineffectiveness claims. On December 20, 1979, the court issued an opinion holding that Fountain's trial counsel had provided constitutionally-effective representation. The following day the court sentenced Fountain to a term of life imprisonment for the murder conviction and a consecutive sentence of ten to twenty years for the robbery convictions.

Following the trial court's rejection of Fountain's claims of ineffective assistance of trial counsel, Attorney Zilli wrote her client a letter in January 1980, the attorney-client communication upon which Fountain grounds his case. In this letter, Zilli advised Fountain not to appeal from the court's decisions on remand because, in her professional opinion, the risks involved were too great. In pertinent part, the letter, dated January 7, 1980, read as follows:

> As I indicated to you when you were here for resentencing, we must now make a decision whether to appeal [the Court of Common Pleas']

4

finding that counsel rendered effective assistance in your case.

I have done more research in the area and must tell you I do not feel an appeal should be taken. My reasons are as follows. First, I do not believe that we would get a favorable decision from the Supreme Court. The Court will most likely not overturn [the Court of Common Pleas'] decision.... Secondly, even if the Supreme Court were to [reverse] . . . the result would not really be favorable. Such a decision would mean that you would be granted a new trial. I must be honest and say that if you are tried again, I have absolutely no doubt that you will be found guilty again. At that point, we would have real problems. As I've explained to you, the law now appears to provide that you could be subject to the death penalty again. I'll admit the law is not clear but the "if" is not really on your side. I believe it's simply too risky.

Please consider all this and call me with your decision.

Supp. App. at 1.

On January 16, 1980, Fountain wrote Zilli a response letter in which he wrote that there was "no need in giving [the Commonwealth] another shot at me as far as the death sentence goes. . . ." Supp. App. at 3. He thus told Zilli that she could "drop the [a]ppeal, only under the [u]nderstanding[] that we know that I would be [s]ubject to the [d]eath [s]entence, should I be granted a new trial. . . ." Id. As later found by the Superior Court of Pennsylvania, Fountain abided by counsel's advice and thus "ask[ed] Zilli not to pursue appellate proceedings so that he would not be subject to the death penalty again." App. at 46.

Shortly after Zilli and Fountain exchanged these communications, and after the time for Fountain to file an appeal had passed, the Supreme Court of Pennsylvania decided

Commonwealth v. Story, 440 A.2d 488 (Pa. 1981) ("Story II"), which held that the revised death penalty statute could not be applied retroactively, a holding contrary to Zilli's implicit prediction. In that case, a jury had convicted Stanton Story for a 1974 murder; Story received a death sentence for this crime. Story II, 440 A.2d at 489. On direct appeal, the Supreme Court of Pennsylvania held that the murder conviction had been improperly obtained, and thus granted him a new trial. Commonwealth v. Story, 383 A.2d 155 (Pa. 1981) ("Story I"). In the interim between the 1974 murder and the decision in Story I, the Pennsylvania Supreme Court had decided Moody and, in turn, the General Assembly had promulgated the 1978 revamped death penalty provisions.

At Story's retrial, a jury again found him guilty of murder and the Commonwealth, relying on the post-Moody 1978 death penalty provisions, sought and obtained another death sentence. Story II, 440 A.2d at 489. On appeal, however, the Supreme Court of Pennsylvania held that the 1978 provisions did not have retroactive force and thus were only applicable to murders committed on or after the statute's date of enactment, September 13, 1978. Id. at 490. Because the death penalty provisions in effect at the time of Story's crime had been found unconstitutional, see Moody, 382 A.2d at 444, the Court vacated Story's sentence of death and imposed a sentence of life imprisonment. 440 A.2d at 492.[2]

In December 1996, some fifteen years after he was resentenced, Fountain filed a petition for collateral relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq., in the Court of Common Pleas for Dauphin County. This petition raised many claims, including Fountain's claim that, by advising him not to pursue a direct appeal following the remand proceedings, Zilli had failed to provide effective assistance in dereliction of

---

[2] Justice Larsen, joined by Justices Flaherty and Kauffman, dissented from the majority's decision in Story II. Relying on, inter alia, Dobbert v. Florida, 432 U.S. 282 (1977), those Justices concluded that the 1978 legislation should be given retroactive effect. Story II, 440 A.2d at 493-509 (Larsen, J., dissenting).

his rights under the Sixth Amendment to the United States Constitution. On June 5, 1998, the court denied Fountain's petition in all respects.

In an opinion and order dated August 24, 1999, the Superior Court of Pennsylvania affirmed the denial of Fountain's PCRA petition and, in so doing, rejected, inter alia, Fountain's claim that Zilli's performance on remand fell below a constitutionally acceptable level. The Supreme Court of Pennsylvania denied allocatur on January 20, 2000.

In March 2000, Fountain filed a second PCRA petition in state court. On April 9, 2001, the court ruled that the petition was untimely and thus denied relief; although Fountain appealed this decision to the Superior Court of Pennsylvania, that court also denied relief. Fountain did not seek allocatur with the Supreme Court of Pennsylvania.

In May 2002, Fountain filed a 28 U.S.C. § 2254 application for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania raising multiple issues.[3] The District Court did not hold a hearing and

---

[3] Notably, Fountain did not file his federal habeas application within the applicable limitations period. Specifically, because his conviction became "final" prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Fountain needed to file his application within a year of that statute's enactment, less the time any properly filed collateral petition was pending in state court. Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). Although Fountain's first PCRA petition tolled the filing period, his second did not; rather, because the Superior Court found the second petition untimely, it was not "properly filed" and thus did not serve to toll the running of the statute of limitations. See Pace v. DiGuglielmo, ___ U.S. ___, 125 S. Ct. 1807, 1814 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under [28 U.S.C.] § 2244(d)(2)."). That being said, the Commonwealth did not raise the statute of limitations issue in the District Court; likewise, the District Court did not itself sua sponte raise the issue either. Cf.

rejected all of Fountain's claims (App. 6, 28).

In its Memorandum and Order dated November 18, 2003, the District Court found that Fountain had procedurally defaulted the vast majority of his claims; it did, however, address on the merits whether Zilli "was ineffective for failing to properly advise [Fountain] of the consequences of his right to appeal. . . ." App. at 21. Applying the standards contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the District Court held that the Superior Court's resolution of that issue had not "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . .'" App. at 24 (quoting 28 U.S.C. § 2254(d)(1)). The District Court further stated that "[t]here exists no basis for the issuance of a [COA]." App. at 25.

Nonetheless, this court granted Fountain's request for a COA. Specifically, we granted Fountain's request for a COA "with regard to the appellant's claim that remand counsel was ineffective for advising him not to appeal and failing to file a notice of appeal following resentencing." App. at 5. That is the sole issue before this court.

## II.

Due to the fact that the District Court did not conduct an evidentiary hearing on Fountain's § 2254 application, this court's review is plenary. Slutzker v. Johnson, 393 F.3d 373, 378 (3d Cir. 2004); Everett v. Beard, 290 F.3d 500, 507 (3d Cir. 2002). Our de novo review of the District Court's decision is governed by the provisions of AEDPA which provide the federal courts with specific standards for review of state court

United States v. Bendolph, 409 F.3d 155, 166 (3d Cir. 2005) (en banc). Moreover, in addition to its failure raise the issue below, the Commonwealth's appellate brief also failed to address the limitations issue. Under these circumstances, we will deem the statute of limitations defense waived. See generally Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002) (holding that "the AEDPA limitations period is subject to . . . waiver"); Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief. . . .").

8

adjudications. Under AEDPA, federal habeas relief on any claim decided in a state court is precluded unless the state court's adjudication "resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

A state-court decision is "contrary to" clearly established federal law if (1) the state court applied a rule that contradicts the governing law as set forth in the Supreme Court's cases, or (2) the state court confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a result different from the Court's precedent. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000) (O'Connor, J.); <u>Lewis v. Johnson</u>, 359 F.3d 646, 657-58 (3d Cir. 2004); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999) (en banc). In turn, satisfaction of the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1) requires a habeas petitioner to show that the state court's application of Supreme Court precedent was "objectively unreasonable." <u>Rico v. Leftridge-Byrd</u>, 340 F.3d 178, 181 (3d Cir. 2003). Thus, a federal court's mere disagreement with the state court's application of Supreme Court precedent is not sufficient; rather, a state court adjudication fails the "unreasonable application" test only if the state court identified the correct governing legal rule but unreasonably applied it to the particular case or if the state court either unreasonably extended a legal principle from Supreme Court precedent to a new context in which it should not apply or where it unreasonably refused to extend such a principle to a new context in which it should apply. <u>Gattis v. Snyder</u>, 278 F.3d 222, 234 (3d Cir. 2002).

We digress from consideration of the substantive merits of Fountain's petition to address the Commonwealth's contention that Fountain has waived review of the issue denoted in the COA because he failed to raise a claim of ineffective assistance pertaining to Zilli's advice in the District Court. <u>See</u> <u>generally</u> <u>Bailey v. United Airlines</u>, 279 F.3d 194, 203-04 (3d Cir. 2002) ("Because Bailey has not pointed to anything in the record to demonstrate that he raised this issue with the District

9

Court . . . we will not consider this issue.").

The Commonwealth is correct that Fountain's original May 2002 pro se application for a writ of habeas corpus did not explicitly seek relief from the District Court with respect to the advice that Zilli provided following the remand proceedings. But see United States v. Garth, 188 F.3d 99, 108 (3d Cir. 1999) ("When properly viewed through the more forgiving lens used to construe pro se habeas petitions, we conclude that the claim . . . was properly before the District Court."). Nonetheless, after filing his original application with the District Court, Fountain filed a motion for leave to amend. The Commonwealth did not oppose this motion and, on August 28, 2002, the District Court granted it.

As a result, on September 17, 2002, Fountain filed an amendment to his habeas corpus application in which he specifically raised the issue of Zilli's purported ineffectiveness. Fountain further asked the District Court to incorporate by reference into his § 2254 application all of his previous PCRA filings addressing Zilli's advice and actions. The District Court granted this request. In sum, Fountain properly presented the issue of Zilli's ineffectiveness to the District Court. As a result, we reject the Commonwealth's waiver argument and hold the issue is properly before us.

We turn now to the merits. In conducting our analysis, we must apply the AEDPA standards to the August 1999 opinion of the Pennsylvania Superior Court – the highest substantive state court decision addressing the issue. In rejecting Fountain's ineffective assistance of counsel claim, the Superior Court first applied its decisions in, inter alia, Commonwealth v. Bronaugh, 670 A.2d 147 (Pa. Super. Ct. 1995), and Commonwealth v. Fanase, 667 A.2d 1166 (Pa. Super. Ct. 1995), and determined that, "by asking Zilli not to pursue appellate proceedings," Fountain had "waived" his right to seek appellate review. Due to this waiver, the court concluded that his claim of ineffective assistance was untenable. App. at 45-46.[4]

---

[4] For the reasons explained by this court in Lewis v. Johnson, 359 F.3d 646 (3d Cir. 2004), the Superior Court's

10

The court further noted, however, even apart from Fanase and the waiver rule, "the substance of [Fountain's] claim of ineffective assistance of counsel is without merit." App. at 46. The court stated:

> The law concerning retroactivity of death penalty statutes was uncertain at the time Zilli's advice was rendered and followed. Pennsylvania law seemed to suggest a favorable outcome for [Fountain], while a U.S. Supreme Court case [Dobbert v. Florida, 432 U.S. 282 (1977),] suggested that the newly enacted death penalty might have applied. Zilli advised [Fountain] of his options, and gave her professional opinion not to pursue an appeal.
>
> [Fountain] argues the counsel's advice was not reasonable. . . . A review of the record supports the finding by the PCRA court that Zilli

application of the waiver rule was indeed "contrary to" federal law. According to this state-law waiver rule, which Pennsylvania courts have traditionally applied in ineffective assistance of counsel cases involving counsel's failure to file an appeal, "trial counsel cannot be held ineffective for failing to file an appeal when his client has not asked him to do so." Lewis, 359 F.3d at 658 (discussing Commonwealth v. Dockins, 471 A.2d 851 (Pa. Super. Ct. 1984)); see also Fanase, 667 A.2d at 1169. In Lewis, we held that this per se waiver rule was "'contrary to' clearly established law," specifically, Strickland v. Washington, 466 U.S. 668 (1984). 359 F.3d at 659. In the instant case, although the Superior Court applied the Fanase/Dockins waiver rule in rejecting Fountain's claim of ineffective assistance of counsel, it also rendered an alternative holding in which it addressed the merits of the claim irrespective of the purported waiver. And, as explained above, the Superior Court's on-the-merits resolution of Fountain's claim was not contrary to or an unreasonable application of federal law. Therefore, due to its substantive resolution of the ineffectiveness issue, the Superior Court's alternative holding based on the now-debunked waiver rule as announced in Dockins and Fanase is irrelevant.

11

had a reasonable basis for her actions. It is reasonable that in the face of uncertainty as to the applicability of the death penalty, when counsel is convinced that her client will be convicted if retried, allowing the life sentence to stand may be more prudent than taking [an] appeal. The PCRA court found Zilli's actions had a "reasonable basis" and we find no error on this point.

[Fountain] further argues that counsel's failure to take appeal was predicated on incorrect interpretation of the law, and therefore proof of ineffectiveness. The fact that the law prohibiting retroactive application of death penalty statutes became codified after Zilli advised [Fountain] is not evidence of ineffective assistance of counsel. Counsel can not be held ineffective for failing to predict future developments in the law.

App. at 47-49 (internal citations and footnotes omitted).

The test announced in Strickland v. Washington, 466 U.S. 668 (1984), applies to the question of whether Zilli was constitutionally ineffective in rendering her advice regarding Fountain's appeal. Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000).[5] Under the two-prong test of Strickland, a prisoner bears

---

[5] We acknowledge that, because the Supreme Court issued its decision in Strickland after Fountain's conviction became final, Fountain's case presents a potential non-retroactivity problem. See generally 28 U.S.C. 2254(d)(1); Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion) (holding that new rules of law should not ordinarily be applied retroactively to cases on collateral review); Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005) ("Generally, a new rule of criminal procedure will not be applicable to those cases which have become final before the new rule is announced.") (internal citation, quotations, and alterations omitted). The Supreme Court, however, has noted that "a court need not entertain the [non-retroactivity issue] . . . if the State has not raised it. . . ." Goeke v. Branch, 514 U.S. 115, 117 (1995) (per curiam); see also Horn v. Banks, 536 U.S. 266, 271 (2002) (per curiam); Lewis, 359 F.3d at 653 n.4. Thus, although we are free to

12

the burden of showing: (1) that counsel's representation fell below an "objective standard of reasonableness"; and (2) that there is a "reasonable probability" that this ineffectiveness prejudiced the outcome. 466 U.S. at 688, 693.[6]

As the above-quoted excerpts from the Superior Court's August 1999 opinion make patent, the court analyzed whether Zilli's advice and actions were objectively reasonable; therefore, the court applied the correct rule as set forth in the relevant Supreme Court cases – i.e., Strickland and its progeny. Moreover, the Superior Court did not confront a set of facts that were materially indistinguishable from a Supreme Court decision and nevertheless arrive at a result different from the Supreme Court's precedent. Lewis, 359 F.3d at 657-58. Thus, the Superior Court's decision was not "contrary to" clearly established federal law. Id.

Furthermore, the Superior Court's determination that Zilli's advice and actions were objectively reasonable was not an "unreasonable application of" federal law. Under Strickland, a reviewing court must "evaluate the [reasonableness of the

_____

raise sua sponte the non-retroactivity issue, we are not bound to do so and decline to take such a course of action in this case. Cf. Schiro v. Farley, 510 U.S. 222, 229 (1994) ("[A] State can waive the Teague bar by not raising it. . . . Although we undoubtedly have the discretion to reach the State's Teague argument, we will not do so in these circumstances."); Wilmer v. Johnson, 30 F.3d 451, 455 (3d Cir. 1994) ("Although we have the discretion to reach the . . . [non-retroactivity issue] sua sponte . . . we decline to do so in this case.").

[6] We note in passing that, in ascertaining prejudice in a failure to appeal case, the focus ordinarily should not be on the substantive merits of the hypothetical appeal but rather on whether counsel's constitutionally deficient performance deprived the defendant of an appeal that he otherwise would have taken. Flores-Ortega, 528 U.S. at 484. As noted by the Supreme Court, "it is unfair to require . . . [a] defendant to demonstrate that his hypothetical appeal might have had merit . . . . Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." Id. at 486.

13

challenged] conduct from counsel's perspective at the time," 466 U.S. at 689; thus, this court must judge the reasonableness of Zilli's conduct based on the law and the facts as they were known in January 1980.

As noted by the Superior Court in its August 1999 opinion, the United States Supreme Court had decided Dobbert v. Florida, 432 U.S. 282 (1977), shortly before Zilli rendered her advice to Fountain. In that case, the State of Florida charged Ernest Dobbert with several murders alleged to have occurred between December 1971 and April 1972. In July 1972, however, the Florida judiciary struck down Florida's death penalty statute. Subsequently, the Florida legislature passed a new death penalty statute, which corrected the constitutional problems of the prior law. Dobbert was tried, convicted, and sentenced to death under this revised statute. 432 U.S. at 288-90.

In rejecting Dobbert's Ex Post Facto Clause challenge, the Supreme Court found no constitutional problem with the application of the new death penalty procedures to his case. It concluded that "the changes in the law are procedural, and on the whole ameliorative . . . ." Dobbert, 432 U.S. at 292. The Court found dispositive the fact that the new statute "simply altered the methods employed in determining whether the death penalty was to be imposed . . . [and thus made] no change in the quantum of punishment attached to the crime." Id. at 293-94. The Court also rejected Dobbert's argument that there was, for constitutional purposes, no death penalty "in effect" at the time his crimes were alleged to have occurred. Id. at 297-98. Noting that Florida's prior death penalty statute had not yet been found unconstitutional at the time of Dobbert's killings, the Court opined that, irrespective of whether or not the old statute would in the future withstand constitutional attack, it clearly indicated Florida's view regarding the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The Court found that "[t]he statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder." 432 U.S. at 297.

14

Considered in perspective of the Supreme Court's analysis in Dobbert, a prudent defense lawyer operating in January 1980 could have reasonably concluded that Pennsylvania's post-Moody death penalty provisions might have retroactive effect. Specifically, counsel could have reasonably concluded that, like the statute at issue in Dobbert, the 1978 Pennsylvania provisions merely effected procedural, as opposed to substantive, changes in the law. Indeed, like the Florida statute at issue in Dobbert, the 1978 Pennsylvania provisions "simply altered the methods employed in determining whether the death penalty was to be imposed . . . [and did not effect a] change in the quantum of punishment attached to the crime." Dobbert, 432 U.S. at 293-94. Considering that Pennsylvania had a then-presumably valid death penalty statute on the books at the time of Fountain's alleged crime, counsel could likewise have analogized Fountain's situation to that of Dobbert's and reasonably concluded that the Pennsylvania courts would find that the prior law's "existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder." Dobbert, 432 U.S. at 297.

To be sure, several Pennsylvania state court decisions circa 1980 suggested that Pennsylvania's 1978 post-Moody death penalty statute may not have had retroactive effect. See, e.g., Commonwealth v. Crowson, 412 A.2d 1363, 1366 (Pa. 1979) ("At the time of this prosecution, the only valid penalty for murder of the first degree was life imprisonment. . . . Accordingly, we vacate the judgment of sentence of death and impose a sentence of life imprisonment."); Commonwealth v. Edwards, 411 A.2d 493, 494 (Pa. 1979) ("The sentence of death imposed for the murder of the first degree conviction is vacated and a sentence of life imprisonment is substituted therefore. The statute authorizing the death sentence was declared unconstitutional by this Court in [Moody]."). But see Commonwealth v. Kalck, 87 A. 61, 64 (Pa. 1913) ("[S]tatutes which relate to procedure . . . are not to be considered ex post facto, even though the effect may be to enhance the severity of the punishment."). Moreover, Pennsylvania has a long-standing and codified rule of statutory construction that presumes the non-retroactivity of statutes. See Commonwealth v. McKenna, 383 A.2d 174, 181 n.13 (Pa. 1978) ("In Pennsylvania there is a

15

presumption that statutes are not to have retroactive effect."); 1 Pa. Con. Stat. Ann. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). Nonetheless, considered in perspective of Dobbert, the state of the law regarding the retroactivity (or lack thereof) of Pennsylvania's post-Moody death penalty provisions was certainly an open question in January 1980.[7] Thus, Zilli's advice, see Supp. App. at 1 ("I'll admit the law is not clear but the 'if' is not really on your side. I believe it's simply too risky."), was reasonable, notwithstanding the fact that her feared outcome did not occur.

We note that the record demonstrates that Zilli rendered her advice only after undertaking what appears to have been a conscientious examination of the law. During the PCRA hearing before the Court of Common Pleas, she testified that she researched the issue thoroughly, discussed the matter with her colleagues at the Dauphin County Public Defender's Office, and was in contact with the death penalty experts throughout the case before recommending to Fountain that he not proceed.

In sum, in advising Fountain not to appeal, Zilli's conduct did not fall below an "objective standard" of reasonableness. Strickland, 466 U.S. at 688. Thus, in finding that Zilli had acted "reasonably," App. at 48-49, the Superior Court did not reach an

---

[7] As suggested by Judge McKee during oral argument, the objective reasonableness of Zilli's advice is further buttressed by the fact that three Pennsylvania Supreme Court Justices dissented from the majority's holding in Story II that Pennsylvania's 1978 death penalty provisions did not apply retroactively. Story II, 440 A.2d at 493-509 (Larsen, J., dissenting). Indeed, those Justices opined that Dobbert had "implicitly overrule[d]" the previous state-law cases relied on by the Story majority. Story II, 440 A.2d at 493 (Larsen, J., dissenting). Zilli's advice and performance can hardly be considered "objectively unreasonable" considering that Justices Flaherty, Kauffman, and Larsen all reached the same conclusion as the one she feared – that the 1978 statute applied retroactively to pre-1978 crimes. At the very least, the Justices' dissent certainly indicates that reasonable legal minds operating in 1980 could have differed on the question.

16

outcome "contrary to, or involv[ing] an unreasonable application of," clearly established federal law.  28 U.S.C. § 2254(d)(1). This court, therefore, will decline to grant Fountain's petition for a writ of habeas corpus.  Cf. United States v. Gonzalez-Lerma, 71 F.3d 1537, 1542 (10th Cir. 1995) ("Clairvoyance is not a required attribute of effective representation."); Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995) ("[C]ounsel's performance is not deficient by failing to predict future developments in the law."); Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir. 1987) ("Reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.").

## III.

For the above reasons, we will affirm the District Court's order denying Fountain's application for a writ of habeas corpus.

_____