# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) ID No. 151000348
)
RICHARD LEWIS, )
)
Defendant. )

Decided: March 23, 2021
Submitted: January 13, 2021

## MEMORANDUM OPINION

*Upon Consideration of*
*Defendant's Amended Motion for Postconviction Relief.*
**DENIED.**

Matthew Buckworth, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorney for the State of Delaware.

Patrick J. Collins, Esquire and Kimberly A. Price, Esquire, COLLINS & ASSOCIATES, Wilmington, Delaware. Attorneys for Defendant.

**BUTLER, R.J.**

This matter is back in this Court after a sojourn and affirmance in the Delaware Supreme Court. It is now equipped with newly appointed counsel, a Rule 61 motion for relief alleging ineffective assistance by trial and appellate counsel, and new theories arguing issues previously raised in the trial proceedings. Lewis' original *pro se* motion under Rule 61 has been amended by post-conviction counsel. This is the Court's ruling on the amended Rule 61 motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Throughout his criminal career, Lewis has been a second story man; a cat burglar of discerning tastes. He was convicted of his first residential burglary in 1978. He was convicted of two more in 1981, seven burglaries in 1993 (originally a 44 count indictment), and another in Pennsylvania in 2007.[1] Lewis consistently sought out high-end homes in affluent neighborhoods and gained entry through a second floor window.[2] Wearing gloves and a hooded sweatshirt pulled around his face, he would take only high value items.[3] When finished, Lewis would load the booty into a pillowcase, go to his vehicle, change his clothes and leave.[4]

In 2015, New Castle County Police Detective DiNardo was assigned to investigate a spate of residential burglaries in the Greenville area.[5] After one such

---

[1] Mot. App. at A512-13.
[2] *Id.* at A161.
[3] *Id.* at A350-54.
[4] *Id.* at A391-405.
[5] *Id.* at A405.

burglary, the detective found late night security footage from a store parking lot near the victimized residence. Detective DiNardo determined that a white car exiting the lot was likely a 1991 white Lexus GS400 owned by Lewis.[6] Based partly on that footage, Detective DiNardo sought and obtained a warrant to attach a GPS device to Lewis' Lexus.[7]

The GPS device was attached on June 25, 2015 in Delaware.[8] The order stated "The Mobile Tracking Device is to be installed within the state of Delaware," and was authorized for a 30 day period beginning upon installation.[9] It did not expressly limit the tracking surveillance within any particular geographic area. New Castle County police later obtained a second warrant to put a GPS device on Lewis' Ford Explorer, under the same terms as the Lexus warrant.[10] The probable cause supporting these warrants is not challenged here.

Throughout the course of the GPS surveillance, New Castle County police tracked the Lexus both within and outside of Delaware. During one out of state trip, the vehicle went to Radnor, Pennsylvania, a town known for its wealthy residences.[11] Based on the GPS tracking information, Delaware authorities contacted Radnor

---

[6] *Id.* at A406.
[7] *Lewis v. State*, 180 A.3d 40, 2018 WL 619706, at *2 (Del. Jan. 29, 2018) (TABLE).
[8] Mot. App. A162.
[9] *Lewis*, 2018 WL 619706, at *3.
[10] *Id.* at *4.
[11] *Id.*

police. Radnor police informed Detective DiNardo that a burglary occurred the very evening the Lexus had parked in Radnor and that the Radnor victims later discovered their stolen jewelry on an eBay page owned by Metals, NY.[12] When New Castle County police contacted the owner of Metals, NY in Manhattan, the owner identified Lewis as the seller of the stolen jewelry.[13]

In October 2015, Lewis was arrested for 8 burglaries in Delaware.[14] He was indicted and the case proceeded as cases do. Lewis' trial counsel filed an untimely motion to suppress the GPS data.[15] The motion was denied as procedurally barred.

The first trial began on June 14, 2016 and lasted for four days. But on the fourth day of trial, the jury viewed an interview with Lewis that included references to his prior burglary convictions.[16] Upon motion of the Defendant, the Court granted a mistrial due to the improper introduction of "other crimes" evidence.[17]

After the mistrial, the Court agreed to consider the untimely, procedurally barred motion to suppress. The motion sought suppression of the GPS data on grounds that the warrant lacked probable cause. The Court engaged in a lengthy discussion with counsel over the territorial applicability of the warrant's reach – a

---

[12] *Id.*
[13] Mot. App. A437-438.
[14] *Id.* at A1.
[15] *Id.* at A291.
[16] *Id.* at A280.
[17] *Id.* at A286.

subject arguably outside the scope of the motion to suppress itself. Nonetheless, after argument, the motion was denied.[18]

The second trial then commenced on November 29, 2016. At its conclusion, the jury found Lewis guilty of all charges in the Indictment.[19] Two months later, the State filed a Motion to Declare Defendant a Habitual Offender in which it detailed four separate prior burglaries as predicate offenses.[20] Defendant was dutifully given a very long jail sentence.

In addition to the GPS warrant issue to be discussed presently, one evidentiary ruling at trial is challenged here.

As mentioned previously, the State had video surveillance recovered from the shop in Greenville that showed a white Lexus similar to Lewis' near a burglary on Carpenter's Row in Montchanin.[21] The video surveillance tape was authenticated by Detective Babinger, who obtained the surveillance footage directly from the shop's computer.[22] Defense counsel objected to authentication of the video on grounds that the shopkeeper's testimony was necessary to authenticate the video. The objection was overruled and the video was shown to the jury.[23]

---

[18] *Id.*
[19] *Id.* at A465-69.
[20] *Id.* at A499-501.
[21] *Id.* at A399.
[22] *Id.*
[23] *Id.* at A400.

## ISSUES RAISED BY DEFENDANT

On direct appeal, counsel briefed an argument that the GPS warrant lacked probable cause. This issue was soundly decided against Defendant on appeal. But counsel raised a second argument that the GPS warrant was invalid because an authorizing magistrate in Delaware may not authorize a warrant's data collection outside the state of Delaware. While the Supreme Court discussed the issue in its ruling, it ultimately concluded that it had not been fairly raised on appeal and had therefore been waived by the Defendant. The Supreme Court's Order affirmed this Court's denial of the suppression motion and Lewis' convictions and sentence. Thus, the Supreme Court has yet to rule on the constitutional question whether GPS data collected outside Delaware pursuant to a warrant authorized and executed in Delaware is admissible as against either constitutional or statutory challenges.[24]

In the motion presently before the court, post-conviction ("PCR") counsel has argued that trial and appellate counsel were ineffective by failing to "effectively" litigate the suppression of evidence obtained from the out-of-state GPS monitoring.[25]

---

[24] *Metelus v. State*, 200 A.3d 227, 2018 WL 6523215, at \*5 (Del. Dec. 10, 2018) (TABLE) (declining to express opinion on constitutionality of extraterritorial GPS search when heroin found in jeep would have been inevitably discovered).
[25] Petitioner's Mot. D.I. 28.

Second, counsel argues that appellate counsel was ineffective for failing to challenge the authentication of the surveillance footage from the Greenville shop.[26]

The record has been supplemented by affidavits of trial and appellate counsel and a brief in opposition filed by the State.

## ANALYSIS

### A. *Out-of-State GPS Monitoring*

PCR counsel argues trial and appellate counsel failed to "effectively" litigate suppression of the evidence derived from the out-of-state GPS monitoring.[27]  This failure, it is alleged, constituted deficient performance that prejudiced Lewis.[28]

---

[26] *Id.* at 40.  In its amended motion, PCR counsel raised a potential additional claim, arguing trial counsel was ineffective by failing to challenge the reasonableness of the Attorney General Subpoena used to obtain prison phone calls from the Department of Corrections.  PCR counsel formally raised the additional claim in the reply brief.  Because 1) trial counsel made efforts to exclude the phone calls based on relevancy instead of reasonableness and 2) PCR counsel failed to argue Defendant was prejudiced by showing subpoenaed phone calls were not reasonable under the *Martinez* standard, PCR counsel has failed to present a cognizable claim under R. 61 that defendant was prejudiced.  *See generally Whitehurst v. State*, 83 A.3d 362, 367 (Del. 2013) (holding reasonableness of a subpoena for prison communications is reviewed under the *Martinez* standard of whether "(1) the contested actions furthered an important or substantial government interest . . . , and (2) the contested actions were no greater than necessary for the protection of that interest." (quoting *Procunier v. Martinez*, 416 U.S. 396, 423 (1974))).
[27] Petitioner's Mot. D.I. 33.
[28] *Id.*

6

The Delaware Supreme Court has declined to rule on the admissibility of extra-territorial GPS signals several times.[29] For example, when raised in *Metelus v. State*, the Court said:

> Because we conclude that the heroin found in the jeep inevitably would have been discovered, we do not address the difficult constitutional and statutory issues [whether police may track subjects beyond state borders pursuant to validly issued GPS warrants and properly affixed GPS] raised in this appeal, and we express no opinion thereon.[30]

Trial counsel may render constitutionally deficient representation when his efforts on behalf of his client fall below an objectively reasonable level of competence.[31] Failure to investigate known facts supporting a defense, or failure to raise obvious issues challenging the government's theories and arguments are typical grounds upon which counsel's representation can be found to fall below objective reasonableness.[32] Defendant's argument here is that counsel was constitutionally deficient for failure to raise an argument that the Supreme Court has never ruled on.

---

[29] *Lewis*, 2018 WL 619706, at *6; *Metelus*, 2018 WL 6523215, at *4-5.

[30] *Metelus*, 2018 WL 6523215, at *5 (alteration in original) (internal quotation marks omitted).

[31] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[32] *See Jacobs v. Horn*, 395 F.3d 92, 103 (3d Cir. 2005) ("[C]ounsel did not exercise reasonable professional judgment in failing to investigate further and discover evidence of Jacob's mental retardation, brain damage, and other impairments that could have prevented him from forming the specific intent to kill Tammy Mock."); *Goff v. Bagley*, 601 F.3d 445, 466 (6th Cir. 2010) ("Failure on the part of [] appellate counsel to raise such an obviously winning claim clearly falls below an objective standard of reasonableness . . . .").

7

The Court understands: Defendant would now like this Court – or perhaps the Supreme Court – to rule that the extraterritorial use of the GPS signals was constitutionally improper. Constitutional impropriety would establish prejudice to the defendant, so the argument goes. But in order to successfully press an ineffective assistance claim under *Strickland* and Rule 61, it must be shown that the failure to raise this novel argument fell below the standard of competence expected of criminal trial counsel.[33] Both the "cause" for the deficient performance and "prejudice" must be shown.[34] The Court is unconvinced that failure to raise the territorial applicability of a GPS warrant was a failure of the standard of care expected of a constitutionally effective criminal trial attorney in Delaware in 2016. Put another way, the Court is not convinced that prior counsel's representation falls below a standard of reasonableness if counsel fails to litigate an issue of first impression.

It is well-established that defense counsel has no duty to anticipate changes in law.[35] At the time of Lewis' trial, the law was undecided as to whether Delaware

---

[33] 466 U.S. at 688.

[34] *Id.* at 691-92.

[35] *United States v. Stubbs*, 757 Fed.Appx. 159, 161 (3d Cir. 2018) ("We have long held that there is no general duty on the part of defense counsel to anticipate changes in the law." (citing *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989))); *Fountain v. Kyler*, 420 F.3d 267, 274 (3d Cir. 2005) (holding counsel was not ineffective when it failed to appeal a district court decision to avoid the death penalty because counsel was not required to predict state Supreme Court would rule death penalty statute was not retroactive); *Sistrunk v. Vaughn*, 96 F.3d 666, 671-72 (3d Cir. 1996) (holding counsel was not ineffective when it failed to argue peremptory challenges excluding black venirepersons are improper because counsel was not

police may track subjects beyond state borders pursuant to validly issued GPS warrants. To overcome the deficient performance prong under *Strickland*, the movant bears the burden of proving that prior counsel knew or should have known that Delaware courts would rule that extra-territorial GPS signals are inadmissible. Mr. Lewis has not met this burden. Even today, the Supreme Court has not ruled on the issue. Rule 61 is an inappropriate vehicle by which to ask the Supreme Court to announce new rules of law under the guise of an ineffective assistance of counsel claim.

Lewis' second problem here is proving prejudice. To show defendant was prejudiced, Lewis must show a likelihood that as a result of counsel's dereliction, defendant was deprived of a fair trial.[36] This requires a showing that the defendant has suffered a harm that undermined confidence in the outcome. Here, the argument is that the evidence derived from the collection of extra-territorial data from the GPS tracker prejudiced him. The argument presumes that the collection of such extra-territorial data was a harm that should have been suppressed at trial. The Court disagrees.

---

required to predict the Supreme Court would prohibit raced-based peremptory challenges).

[36] *Albury v. State*, 551 A.2d 53, 60-61 (Del. 1988).

9

The remedy of suppression of evidence is reserved for that class of seizures that violate a constitutional guarantee.[37]    Although suppression is necessary to vindicate constitutional rights, it is also admittedly in derogation of the trial's function as a "search for the truth."  The point is that before we conclude that the capture of extra-territorial GPS data is subject to suppression, we must first identify what constitutional harm is committed by the acquisition of extra-territorial GPS data.

In *U.S. v. Jones*, law enforcement placed a GPS tracker on the defendant's car without a judicially authorized warrant.[38]  The U.S. Supreme Court ruled that the attachment of GPS tracking devices on an individual's vehicle constitutes a search or seizure within the meaning of the Fourth Amendment and may only be sanctioned if authorized by a warrant.[39]  The theoretical underpinnings of the *Jones* opinion are worth considering.

According to Justice Scalia, the attachment of the GPS device was a common law trespass on the personal property of the defendant and this brought it within the ambit of the Fourth Amendment.  For Justice Sotomayor in her concurrence, the critical inquiry was the defendant's reasonable expectation of privacy and not simply whether authorities had trespassed on defendant's property.  Because citizens may

---

[37] *See generally Rickards v. State,* 77 A.2d 199, 205 (Del. 1950).
[38] 565 U.S. 400, 403 (2012).
[39] *Id.* at 402.

reasonably expect that tracking devices will not be placed on their cars, Jones had a reasonable expectation of privacy that the Fourth Amendment must protect.

The different approaches to the Fourth Amendment question raised in *Jones* demonstrate that the critical event for Fourth Amendment purposes was not the data produced by the GPS unit, but rather the attachment of the GPS device on the suspect's vehicle. The Court did not question or suggest that the data produced by the GPS device was subject to some second or different Fourth Amendment analysis. The point of intrusion on the vehicle was the event requiring a probable cause finding.[40] The Court scarcely mentioned the data pushed out by the GPS unit or what jurisdiction the vehicle was in when it did so.[41] It would seem, therefore, that the constitutional "harm," sought to be prevented by the warrant requirement is the placement of the tracker, not the data emitted as a result thereof from wherever it is generated. Neither *Jones* nor the Fourth Amendment support the proposition that data produced in a different jurisdiction is somehow off-limits to law enforcement when it is received pursuant to a lawfully issued warrant.

---

[40] *Id.* at 405.

[41] It is worth noting that *Jones* involved a GPS device attached to a vehicle in the District of Columbia, one of the few jurisdictions smaller than Delaware. It is all but inconceivable that the *Jones* GPS vehicle did not travel out of the District, emitting GPS tracking data the whole time.

We might also consider the Supreme Court's jurisprudence with respect to the knock-and-announce rule. In *Hudson v. Michigan*[42] the U.S. Supreme Court held that while the rule that police must knock and announce before forcing entry with a warrant is a constitutional principle, a violation of the rule does not require suppression of all evidence found in the subsequent search. The court found that the interests protected by the knock-and-announce rule do not include one's interest in preventing the government from seeing or taking evidence described in a warrant, finally ruling that suppression of all evidence found in the search was not required.[43]

Similarly here, the interests sought to be protected by requiring a warrant before placing a GPS tracker are the privacy (or property) interests of the suspect. Suppression of evidence seized without a warrant for a GPS tracker is the tool used to enforce those interests. The defendant has not articulated any specific right beyond that privacy interest that might be protected by suppressing data generated by the GPS tracker when the tracker leaves the jurisdiction. Thus, suppression of out of state GPS data "would not serve the purpose of the rule" requiring a warrant for the placement of a GPS tracker.[44]

---

[42] *Hudson v. Michigan*, 547 U.S. 586, 589-95 (2006).
[43] *Id.* at 589-95.
[44] *See generally New York v. Harris*, 495 U.S. 14, 20 (1990) (although arrest of Harris inside his residence without a warrant was unlawful, statement made outside the residence would not be excluded, the purpose of the warrant requirement is not served by suppression of the statement).

Because the Court will not find trial counsel ineffective for failing to "effectively" raise an issue of first impression, and because the Court believes that even if he had done so, effectively, the issue would not have been decided in his favor and he therefore suffered no prejudice, the Court concludes that Defendant's first claim for relief must be denied.

## B. *Surveillance Footage Authentication*

Lewis next argues that appellate counsel was ineffective for failing to appeal the Court's allegedly incorrect denial of Defendant's objection to the admissibility of the surveillance footage from the Greenville parking lot on grounds that it was not properly authenticated.

Trial counsel did object to the admission of the surveillance footage from the Greenville shop parking lot on authentication grounds. The Court overruled the objection. Here is why.

To satisfy the authentication requirement of D.R.E. Rule 901, the proponent must produce sufficient evidence to support a finding that the item is what the proponent claims it is.[45] Testimony of a witness with knowledge satisfies the authentication requirement.[46] The standard for authentication is not a controversial

---

[45] D.R.E. 901(a).
[46] D.R.E. 901(b)(1).

one—the burden is low.[47]  At trial, Officer Babinger testified that he used the store's computer himself to confirm the computer surveillance system accurately captured the date and time of the robbery.[48]  This court found that Officer Babinger possessed the requisite knowledge under Rule 901(a) and (b)(1) to support a finding the video is what Officer Babinger claimed it was.

Lewis argues that a representative from the store should have testified about the surveillance system because the representative would have the requisite knowledge to confirm the dates and times are accurate.  There is no requirement under Delaware law, however, that the individual who recorded the video must testify in order to authenticate the video recording.[49]  While a representative from the store could authenticate the video, the representative is not the only witness that possessed the requisite knowledge.  Officer Babinger went to the store, observed where the cameras were located, and watched the surveillance video from the store's computer—it is clear Officer Babinger had the requisite knowledge to authenticate the video.[50]  Therefore, this Court finds that Lewis has failed to show that the surveillance footage was improperly admitted.

---

[47] *See Mills v. State*, 131 A.2d 806, 2016 WL 152975, at *1 (Del. Jan. 8, 2016) (TABLE) ("The burden of authentication is a lenient one."); *Cabrera v. State*, 840 A.2d 1256, 1264-65 (Del. 2004) ("The burden of authentication is easily met.").
[48] Mot. App. A400.
[49] *State v. Hill*, 2017 WL 1094369, at *2 (Del. Super. Mar. 22, 2017).
[50] Mot. App. A400.

## CONCLUSION

For all of the foregoing reasons, Lewis' motion for relief under Rule 61 is

**DENIED**.

    **IT IS SO ORDERED**.

<u>**/s/ Charles E. Butler**</u>
Charles E. Butler
Resident Judge