**Commonwealth v. Brandwein**

*Gary F. Dobias, district attorney,* for Commonwealth.

*Stephen P. Vlossak Sr.,* for defendant.

NANOVIC, *P.J.,* July 16, 2009—

## PROCEDURAL AND FACTUAL BACKGROUND

On July 10, 2006, Kevin Brandwein, the defendant in these proceedings, pled guilty to assaulting a juvenile

court officer while in the performance of his duties and to harassing a prison guard at a time when he was an inmate at the Carbon County Prison, both felony offenses.[1] The aggravated assault charge stems from an incident which occurred on November 1, 2005, in the Carbon County Courthouse while defendant was awaiting a disposition proceeding in a juvenile matter. The aggravated harassment of a prison guard occurred on January 5, 2006.

Before accepting defendant's pleas, Senior Judge John P. Lavelle, before whom the pleas were entered, conducted a colloquy to ascertain that defendant's pleas were being made knowingly, intelligently, and voluntarily. Following his acceptance of defendant's pleas, Judge Lavelle sentenced defendant to two concurrent terms of imprisonment of 18 to 60 months in a state correctional institution. Both the pleas and the sentences imposed by Judge Lavelle were in accordance with a plea agreement previously reached between defendant and the Commonwealth on May 18, 2006. Pursuant to that agreement, all remaining charges in each case were to be nolle prossed.[2]

---

1. Aggravated assault, the charge to which defendant pled guilty in the case docketed to no. 657 CR 05 is a felony of the second degree. 18 Pa.C.S. §2702(a)(3). In the case docketed to no. 241 CR 06, defendant pled guilty to aggravated harassment by a prisoner, a felony of the third degree. 18 Pa.C.S. §2703.1.

2. In the case docketed to no. 657 CR 05, the charges to be dismissed were assault by a prisoner (18 Pa.C.S. §2703(a)), resisting arrest (18 Pa.C.S. §5104), and disorderly conduct (18 Pa.C.S. §5503(a)(1)). In the case docketed to no. 241 CR 06, the charges to be dismissed were simple assault (18 Pa.C.S. §2701(a)(3)) and harassment (18 Pa.C.S. §2709(a)(1)).

In neither case did defendant file a post-sentence motion or a direct appeal. Accordingly, the judgment of sentence in each case became final on August 9, 2006. Thereafter, on July 16, 2007, defendant filed a Post Conviction Relief Act (PCRA)[3] petition, his first, pro se. Upon receiving this petition, we appointed post-conviction counsel to represent defendant in presenting his claim.

At the hearing on defendant's petition, counsel identified three issues which defendant wished to pursue: (1) whether medication prescribed to defendant for mental health issues so clouded his thinking that he was unable to enter a knowing, voluntary, and intelligent plea; (2) whether defendant's history of mental health illness and ongoing treatment dictated a plea of guilty but mentally ill, rather than one of guilty alone, and if so, whether trial counsel was then ineffective for failing to consider, present, and develop a plea of guilty but mentally ill on defendant's behalf; and (3) whether defendant is entitled to reinstatement of his direct appeal rights nunc pro tunc for counsel's failure to file an appeal on defendant's behalf, which defendant claims he requested. (PCRA hearing, pp. 4-6.)[4] These issues will be discussed in the order presented.

## DISCUSSION

Defendant is a young man with a troubled past. He has been in placement most of his life. Since he was four or

---

3. 42 Pa.C.S. §§9541-9546.

4. The PCRA hearing occurred on January 9, 2009, with the transcript of those proceedings being filed on May 14, 2009. The transcript of the proceedings surrounding defendant's plea and sentencing which occurred on July 10, 2006, is separately referred to in this opinion.

five years of age, he has suffered from and has been treated for bipolar disorder and anger management problems. (PCRA hearing, p. 7.) He is now 22 years old, having been born on July 7, 1987.

### Validity of Plea[5]

At the time of his plea, defendant advised Judge Lavelle that he was being treated for mental health issues, specifically for bipolar disorder and having anger management problems, and that he took medication for his illness. (Plea and sentencing, pp. 8-9.) When asked by Judge Lavelle whether he was taking any medication, defendant responded that he was and that the only medication whose name he could recall was Depakote, 1500 milligrams per day. When Judge Lavelle inquired further about defendant's ability to understand the proceedings, defendant replied that he understood and comprehended what was occurring. (Plea and sentencing, pp. 9-10.) In contrast, at the PCRA hearing, defendant testified that he was heavily medicated at the time of his plea—that he was then taking 800 milligrams of Trazodone, 800 milligrams of Trileptal, and 2000 to 2500 milligrams of Depakote—and that he did not truly understand what was happening or what he was doing.

---

5. This issue has not been couched in terms of counsel's alleged ineffectiveness and appears to have been waived. "Absent extraordinary circumstances, the failure to file a direct appeal from a judgment of sentence amounts to waiver of any claim which could have been raised in such an appeal, thereby precluding collateral relief." *Commonwealth v. Fanase,* 446 Pa. Super. 654, 661, 667 A.2d 1166, 1169 (1995). Nevertheless, because defendant has also requested reinstatement of his direct appeal rights, we address the merits in the interest of justice.

(PCRA hearing, p. 12.) On this basis, defendant contends that his plea was not voluntarily, knowingly, and intelligently made. The record, however, belies this contention.

When questioned by Judge Lavelle during his plea colloquy, defendant testified that: (1) he was being treated for mental illness; (2) the medications he was taking did not adversely affect his understanding or comprehension of the proceedings; (3) he understood the factual bases for his pleas; (4) he was pleading guilty because he was guilty; (5) his attorney had reviewed the charges with him, the sentences, and his rights as a defendant; (6) he was familiar with the plea agreement and had no questions he wanted to ask about the plea; and (7) he understood the court was not a party to the plea agreement.

In the written guilty plea colloquy which accompanied defendant's oral plea and which was made part of the record, defendant represented that he: (1) read and understood the English language (no. 6); (2) was not under the influence of alcohol or any kind of drugs (no. 7); (3) was currently being treated for mental illness and was taking medication, identified as Depakote (nos. 10 and 11); (4) had sufficient mental capacity to understand what he was doing and to understand the written questions directed to him and to answer them correctly (no. 12); (5) understood the nature of the offenses to which he was pleading guilty and the elements of those offenses (nos. 14 and 15); (6) understood his right to trial by jury (nos. 17 and 18); (7) understood that he was presumed innocent until proven guilty (no. 19); (8) was aware of the permissible range of sentences and/or fines for the offenses for

which he was pleading guilty (no. 28); and (9) was entering the pleas of his own free will and had not been pressured or forced by anyone to do so (nos. 35, 36, and 37).

"Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Rush,* 909 A.2d 805, 808 (Pa. Super. 2006). Further, "a criminal defendant who elects to plead guilty has a duty to answer questions truthfully." *Commonwealth v. Cortino,* 387 Pa. Super. 210, 216, 563 A.2d 1259, 1262 (1989). The court is entitled to rely on what the defendant says and the defendant may fairly be bound by what he tells the court during a plea colloquy. Moreover, the court may "assess for itself the [defendant's] mental state at the time of the colloquy." *Id.*

The transcript of defendant's oral colloquy before Judge Lavelle shows that defendant was attentive, coherent, and responsive to the court's questions. When asked specifically about his mental illness and the medication he was taking, defendant acknowledged that he was alert, knowledgeable, and understood the proceedings. Significantly, after questioning defendant about his mental illness and medication, Judge Lavelle documented his perception of defendant's appearance and stated, "You look very sharp to me, and you seem to comprehend everything that is going on." (Plea and sentencing, p. 9.)

Based upon our review of the record, we believe that defendant was capable of rationally understanding his plea and its consequences and are convinced that at the

time of his plea and sentencing he in fact understood what he was doing and why. The sentences defendant received were both within the standard guideline range, were concurrent to one another rather than consecutive, and followed the plea agreement which defendant had entered almost two months earlier. Accordingly, we concur with Judge Lavelle's assessment that defendant's plea was knowingly, voluntarily, and intelligently entered.

### Guilty but Mentally Ill

Defendant's second and third issues rely on section 9543(a)(2)(ii) of the PCRA, ineffective assistance of counsel, as the basis for challenging his convictions.[6] To

---

6. Under this section, a claim for ineffectiveness may be raised if the ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(ii). Under previous interpretations of this language which required an ineffectiveness claim to raise a question of whether an "innocent individual" had been convicted, defendant's claim would not be cognizable under the PCRA since a plea of guilty but mentally ill is itself an admission of criminal wrongdoing and not a defense. See *Commonwealth v. Grier,* 410 Pa. Super. 284, 289, 599 A.2d 993, 995-96 (1991). This is no longer the case. In *Commonwealth v. Cappello,* 823 A.2d 936 (Pa. Super. 2003), the court stated:

"[A]ll constitutionally-cognizable claims of ineffectiveness are reviewable under the PCRA. In *[Commonwealth ex rel.] Dadario [v. Goldberg,* 565 Pa. 280, 773 A.2d 126 (2001)]*,* our Supreme Court interpreted the 'truth-determining process' language contained in section 9543(a)(2)(ii) as the legislature's attempt to adopt the known Sixth Amendment standard of prejudice discussed in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], rather than its intent to limit the scope of ineffectiveness claims reviewable in PCRA proceedings. Therein, the court stated, 'Therefore, if a petitioner claims that he or she was denied the effective assistance of

prevail on a claim of ineffectiveness of counsel, defendant must show: "(1) that the claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Bath,* 907 A.2d 619, 622 (Pa. Super. 2006), *appeal denied,* 591 Pa. 694, 918 A.2d 741 (2007). "The failure to satisfy any prong of this test will cause the entire claim to fail." *Id.* "Finally, counsel is presumed to be effective and [defendant] has the burden of proving otherwise." *Id.*

Defendant claims counsel was ineffective for failing to recommend and advocate a plea of guilty but mentally ill. Such a plea, defendant contends, would have provided needed treatment for his underlying health issues, rather than incarceration alone. Defendant's argument implicitly assumes, without analysis, both the viability of this plea and its omission as adversely affecting him.

A plea of guilty but mentally ill is not a matter of right. Such a plea in this case would have required both the consent of the Commonwealth—a fact belied by its belief that the time for treatment was over (PCRA hearing, pp. 41-42, 46) and its agreement to dismiss other charges—and the approval of the court. Pa.R.Crim.P. 590(A)

---

counsel in violation of the Sixth Amendment and Article 1, Section 9 of the Pennsylvania Constitution, section 9543(a)(2)(ii) of the PCRA allows the petitioner to seek relief.'" *Id.* at 941. (citations omitted)

Consequently, both of defendant's claims of ineffectiveness of counsel are cognizable under the PCRA.

(3). Moreover, before accepting a plea of guilty but mentally ill, the court is required to hold a hearing to determine whether the defendant was "mentally ill *at the time of the offense* to which the plea is entered." 18 Pa.C.S. §314(b). (emphasis added) Definitionally, a person is mentally ill if as a result of mental disease or defect he "lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." 18 Pa.C.S. §314(c) (1).[7]

None of the illnesses with which defendant has been diagnosed necessarily affect his cognitive functioning

---

7. A plea of guilty but mentally ill is not an acquittal but is an acknowledgement of criminal wrongdoing. It is therefore not a defense to criminal charges. "[A] finding of guilt with mental illness does not negate the intent element of crimes, nor should it act as a mitigating factor at sentencing." *Commonwealth v. Rabold,* 597 Pa. 344, 363, 951 A.2d 329, 340 (2008); see also, *Commonwealth v. Sohmer,* 519 Pa. 200, 210, 546 A.2d 601, 606 (1988) ("Mental illness under our Crimes Code will not be permitted to eliminate the mens rea requirement for culpability or otherwise criminal conduct unless the M'Naghten Test is met."). Such a finding is "not determinative of the defendant's criminal responsibility or culpability, but rather goes to an aspect of his post-verdict disposition." *Rabold,* 597 Pa. at 370, 951 A.2d at 345.

Unlike a finding of insanity which negates intent and therefore acquits, "in considering whether to find a defendant guilty but mentally ill or simply guilty, the jury is considering types of guilt, not the questions of innocence or valid defenses." *Commonwealth v. Trill,* 374 Pa. Super. 549, 602, 543 A.2d 1106, 1132 (1988) (Beck, J., concurring), *appeal denied,* 522 Pa. 603, 562 A.2d 826 (1989). "The legislature, in formulating the guilty but mentally ill verdict has established an intermediate category to deal with situations where a defendant's mental illness does not deprive him of substantial capacity sufficient to satisfy the insanity test but does warrant treatment in addition to incarceration." *Id.* at 581, 543 A.2d at 1122.

and his ability to distinguish between right and wrong. At least, defendant has not proven or persuaded us to the contrary. While his anger management problems signal a possible inability to conform conduct to the requirements of the law, the extent of defendant's disability in this regard and its role, if any, in understanding why defendant did what he did was never explained. To the contrary, the separate incidents with which defendant was charged occurred two months apart and each involved planning and thought. The November 1, 2005 incident involved defendant's decision to commit an offense as an adult so he would not be returned to juvenile detention. The January 5, 2006 incident involved defendant preparing a mixture of urine and feces which he later sprayed on a prison guard.

The question asked in the second half of the definition of mental illness is whether defendant lacked substantial capacity to conform his conduct to the requirements of the law at the time of the incident. Defendant has not proven this. People are afflicted by mental illness to varying degrees, yet most lead law-abiding lives. Defendant's reasoning that his failure to comply with the law proves he lacked the substantial capacity to do so is inverted and does not present a meritorious claim.

Additionally, a person found guilty but mentally ill is guaranteed no specific sentence. In this respect, section 9727(a) of the Judicial Code expressly provides that "[a] defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted . . . may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa.C.S. §9727(a). "The only distinction between the

convicted defendant and the convicted defendant determined to have been mentally ill at the time of the commission of the offense is that, in the case of the latter, the judge, before imposing sentence, must take testimony and make a finding as to whether the person *at the time of sentencing* is severely mentally disabled and in need of treatment." *Commonwealth v. Sohmer,* 519 Pa. 200, 210-11, 546 A.2d 601, 606 (1988). (emphasis in original) Such treatment, if found necessary, may be provided in a prison or hospital setting. See *Commonwealth v. Cain,* 349 Pa. Super. 500, 518-19, 503 A.2d 959, 968-69 (1986).

No mental health evaluation of defendant was done, and defendant has failed to present any competent psychiatric or psychological evidence to establish that he is in need of continued psychiatric or psychological treatment, or that the treatment he is currently receiving within the state correctional system is insufficient or inadequate. (PCRA hearing, p. 11.) In this respect, defendant has further failed to meet his burden of showing how he was in fact prejudiced by counsel's conduct.[8]

---

8. In *Commonwealth v. Fanase,* the court stated:

"Under *Pierce* and its progeny, a defendant is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' . . . This standard is different from the harmless error analysis typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this court in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), states that '[w]henever there is a *reasonable* possibility" that an error "might have contributed to the conviction," the error is not harmless.' This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard

Having failed to establish both the merits of this claim and its prejudicial effect, defendant's claim on this basis is without merit.

## Reinstatement of Appellate Rights

Finally, defendant claims that counsel was ineffective for failing to file an appeal from the judgments of sentence imposed by Judge Lavelle. An "unjustified failure to file a requested direct appeal is ineffective assistance of counsel per se." *Bath,* 907 A.2d at 622. When this occurs, defendant "need not show that he likely would have succeeded on appeal in order to meet the prejudice prong of the test for ineffectiveness." *Id.* Prejudice is presumed. However, "before a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request." *Id.*

As to the factual predicate on which defendant bases this claim, we are unconvinced that defendant requested trial counsel to file an appeal and find to the contrary. Defendant's testimony in this regard does not ring true. If, as defendant contends, his mind was numbed by medication and his thoughts clouded, it appears un-

than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's sixth amendment right to counsel." 446 Pa. Super. at 666-68, 667 A.2d at 1172. (citations omitted) (emphasis in original)

likely that he would have had the mental foresight to request an appeal. If, on the other hand, as we find, defendant understood and agreed to the plea and the sentence imposed, it makes no sense that defendant would have requested an appeal and there would be no basis to do so. Instead, we accept and credit the testimony of trial counsel that defendant never requested his sentences be appealed. (PCRA hearing, p. 45.)

This, however, does not end the inquiry since counsel has a duty to adequately consult with his client as to the advantages and disadvantages of an appeal where there is reason to think that a defendant would want to appeal. A failure to consult under these circumstances may justify a finding of counsel's ineffectiveness for not filing an appeal, even if the defendant himself did not request that an appeal be filed. See *Bath,* 907 A.2d at 623. "[C]ounsel has a constitutional duty to consult with a defendant about an appeal where counsel has reason to believe either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that the particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*

Neither of these circumstances exists in this case. As to the first, we have already stated that it makes no rational sense for defendant to request an appeal from a plea and sentence which he had agreed to and which was accepted and imposed. Under this scenario, there exist no issues of colorable merit to appeal. As to the second, we have factually determined that defendant did not request an appeal be filed.

Since defendant has failed to establish a duty to consult, defendant has likewise failed to establish any breach of that duty.

## CONCLUSION

In accordance with the foregoing, having examined each of the issues raised by defendant in these post-conviction proceedings and finding them to be without merit, defendant's petition is denied.